### 8918.  ATLANTA NATIONAL BANK *v.* BATEMAN.

1. While a seller ordinarily can not convey a greater title than he owns,
   one of the exceptions to this rule is that the bona fide purchaser of a
   negotiable paper not dishonored will be protected in his title, though
   the seller had none.  Civil Code (1910), § 4118.  Thus, if such an in-
   strument be complete in form and duly signed, but prior to its de-
   livery is feloniously taken by the payee, and prior to its maturity is
   indorsed and passed by the unlawful taker to a bona fide holder for
   value, the innocent purchaser is protected in his title, and can recover
   against the maker.  *Harrell* v. *National Bank,* 128 *Ga.* 504, 506 (57
   S. E. 869); 3 R. C. L. 1000, § 210.
2. The defense of non est factum can be successfully pleaded to a suit on
   a negotiable promise to pay, even as against a bona fide holder who took
   it prior to maturity and without notice of such defense.  Civil Code
   (1910), § 4286.  Thus, a valid and completed contract can only be en-
   forced against the maker in the form in which it was executed, and if
   such a completed instrument be intentionally, fraudulently, and mate-
   rially altered by a person claiming a benefit under it, the alteration voids
   the whole contract, at the option of the other party.  Civil Code (1910),
   § 4296;  *Simons* v. *McDowell,* 125 *Ga.* 203 (53 S. E. 1031);  *Hill* v.
   *O'Neill,* 101 *Ga.* 832 (28 S. E. 996);  *Wilson* v. *Barnard,* 10 *Ga. App.*
   98 (2) (72 S. E. 943).
3. One who signs his name to a blank paper and proceeds to entrust the
   signature to another, with authority given the latter to incorporate
   above the signature a promissory note, so as to bind the signer, or
   one who signs an instrument having the form of a negotiable promise
   to pay, but in which are left spaces of such a character as manifestly
   indicate that the instrument is incomplete until they shall be filled

out, is liable to one who in due course and by valid indorsement becomes a bona fide holder of the instrument, according to its actual tenor and effect, although the person to whom it was entrusted by the signer violated his trust and exceeded his authority in writing or completing the obligation; the theory being, so far as innocent holders in due course are concerned, that the delivery of such a signature for such a purpose constitutes the one who receives it the agent of the signer to write out and complete the note; and that the delivery of such a blank negotiable note, signed but incomplete, carries with it, so far as such innocent holders are concerned, an implied authority, on the part of the one so receiving it, to perfect the instrument as the agent of the signer. If loss be sustained by reason of a violation of such trust imposed, it must be borne by the maker or signer whose act thus made possible the loss, and not by an innocent taker of the instrument as subsequently written or filled out. *Moody* v. *Threlkeld*, 13 *Ga.* 55 (9); *Hancock* v. *Empire Cotton Oil Co.*, 17 *Ga.* App. 170, 181 (86 S. E. 434); *Wilkes* v. *Pope*, 4 *Ga. App.* 36 (2) (60 S. E. 823); 3 R. C. L. 1011, § 220; 8 C. J. 730, § 1012; 2 Am. & Eng. Enc. Law (2d ed.), 254-258.

4. If a note in the form of a negotiable instrument is signed in blank, with spaces left which could easily be filled out without exciting suspicion, and, while in such incomplete form and prior to any actual delivery, it is feloniously taken from the possession of the maker and completed, it does not follow that the instrument becomes a valid obligation even in the hands of a bona fide holder for value. Prima facie, where the note is both incomplete and not delivered, the maker is not liable, since the implied authority to complete it by filling in the blanks arises in favor of one receiving it by virtue of its delivery. But the question of actual liability in such a case should be determined by reference to whether or not, under the evidence, negligence of the maker in permitting the instrument to get into circulation constituted the proximate cause of the fraud, such as would estop him from denying a valid delivery. *Hancock* v. *Empire Cotton Oil Co.*, supra.

DECIDED JANUARY 22, 1918.

Complaint; from Wilkinson superior court—Judge Park. April 30, 1917.

*D. S. Sanford,* for plaintiff.

JENKINS, J. This was a suit on a promissory note which was in the following form:

"$214.60. Atlanta, Ga. October 5th, 1914. Sixty days after date I promise to pay to the order of T. F. Goodwyn & Co. two hundred fourteen & 60/100 dollars, at Atlanta National Bank, at Atlanta, Ga., for value received, with interest after maturity until paid at eight per cent. per annum, with all cost of collection, including ten per cent. as attorney's fees, if collected by law or through an attorney at law. Each of us, whether principal, security, guar-

40

antor, endorser, or other party hereto, severally waives and renounces each for himself and family any and all homestead or exemption rights either of us or the family of either of us may have under or by virtue of the constitution or laws of Georgia, or any other State or the United States, as against this debt or any renewal thereof; and each further waives demand, protest and notice of demand, protest, and non-payment. Given under the hand and seal of each party. Due————————.

"D. J. Bateman (L. S.)   Address: Gordon, Ga."

(Indorsed)   "Pay to the order of the Atlanta National Bank. T. F. Goodwyn & Co.                    T. F. Goodwyn & Co."

The note as signed by the defendant was mainly printed, but certain portions of the original form were left blank for the purpose of supplying names, dates, and amounts. These had been filled out before the note was taken by the holder who brought the suit, and there was nothing then to indicate to the taker that it differed in any way from what its condition was when signed. There was no alteration of any of the expressed terms of the instrument. The case was submitted to the judge on an agreed statement of facts, from which it appears: "The defendant about the first of October, 1914, went to Atlanta, Georgia, for the purpose of collecting about $700 that Goodwyn & Co. owed him. Goodwyn told the defendant that he did not have the money, but could get it if he would sign a note, and he would take it to the bank and get it discounted and give him the money. The defendant then signed the note sued upon in blank. When the defendant signed the note there was nothing but the printed matter on the note, the blanks being filled after he signed the same. After he signed the note, as above stated, in blank, he decided not to deliver the same. Goodwyn then snatched the note up and put it in his safe; he requested him to give the note back to him, and he refused to do this. The bookkeeper locked the note in the safe and he could not get it. The defendant did not deliver the note, and never intended the note to be filled out, and did not authorize any one to fill out the blanks, and never received a cent of the money, and Goodwyn & Co. still owe him." "The Atlanta National Bank is a bona fide holder for value before due." From the evidence it appears that the note remained in the hands of Goodwyn & Co. for a period of about five days.

The judgment of the able trial judge, in which he sets forth in an opinion the reasons for his holding, states that judgment was rendered in favor of the defendant for the reason that, under the evidence, the note signed in blank was neither completed nor delivered. No account was taken of the question of negligence, and of whether the proximate cause of the fraud could be properly chargeable to the fault of the defendant in negligently permitting the note to get into circulation, so as to estop him from denying a valid delivery.

We thoroughly agree with the opinion held by the trial judge that it does not follow as a matter of law that a bona fide holder of a negotiable note is necessarily protected in his title where it appears that such instrument has never been actually delivered, and that it was materially incomplete when feloniously taken from the maker. Under such circumstances the maker is prima facie not liable. Indeed, the so-called "uniform negotiable instrument law," now of force in many of the jurisdictions of the country, specifically provides that "Where an incomplete instrument has not been delivered, it will not, if completed and negotiated without authority, be a valid contract in the hands of any holder, as against any person whose signature was placed thereon before delivery." Crawford's Annotated Negotiable Instruments Law, 42, § 15. But, under our view of the law, neither would it do to hold that the signer in blank of a negotiable promise to pay could in all cases and under all circumstances claim exemption from liability on such an instrument signed by him as against an innocent taker for value. Our opinion of the law, as expressed in the fourth headnote, is such as to raise in this case a question of fact as to whether or not the evidence shows that the defendant was guilty of such negligence in allowing the note to get into circulation as would furnish the proximate cause of the fraud and would operate *to estop him from denying actual delivery.* The decision in the case of Linick *v.* Nutting, 140 App. Div. 265 (125 N. Y. Supp. 93), was rendered in accordance with the terms of the negotiable instrument law of force in New York, which contains the provision above quoted. In that case it was held that "The rule that a bona fide holder of an incomplete instrument, negotiable but for some lack capable of being supplied, has implied authority to supply the omission, and to hold the maker thereon, ap-

plies only where the maker has by his own act, or by the act of another authorized or invested with apparent authority by him, put the instrument in circulation as negotiable." It was there held that the signer of a blank check does not owe to a third person, who is not bound to honor the check when completed, the duty of guarding against the *possibility* of the check being stolen and completed and negotiated by the thief, and he is not liable to a third person on a blank check stolen and completed by the thief; but in the opinion in that case it is said: "None of the circumstances connected with the theft of this paper appear, except that it was stolen, and that the persons guilty of the crime have been tried, convicted, and sentenced for the same. Plaintiff, therefore, can not be charged with negligence giving rise to an estoppel, unless a man is guilty of negligence in writing his name upon a piece of paper which by some possibility may afterwards be stolen from him, which paper afterwards comes into the hands of a third person who is an entire stranger to the transaction, with words written over the signature which are sufficient in form to make it a check or note. Actionable negligence involves, first, the existence of a duty; second, the omission to exercise ordinary and reasonable care in connection therewith; and third, injury resulting in consequence thereof. In view of the contractual relation existing between the bank and its depositor, some duty of care may be owing to it. The bank, by the terms of its contract with him, is bound to pay on his account to the holder of paper bearing his genuine signature the amount called for, if such amount is to his credit. But a third person is under no obligation to honor this paper. He can take it or not as he pleases, and as a rule such paper is accepted in reliance upon the immediate transfer thereof. Trust Co. of America *v.* Conklin, 65 Misc. Rep. 1, 119 N. Y. Supp. 367. What duty, therefore, is owing to him? Again, at the risk of being charged with lack of ordinary care and prudence, must one guard against the possibility of a crime being committed?" Further on in the opinion the court says: "We conclude, therefore, that the delivery of a promissory note by the maker is necessary to a valid inception of the contract. The possession of such a note by the payee or indorsee is prima facie evidence of delivery; but if it appear that the note has never been actually deliverd, and that without any confidence, or *negligence,* or *fault* [italics ours] of

the maker, but by force or fraud, it was put in circulation, there can be no recovery upon it, even when in the hands of an innocent holder."

In the English case of Baxendale v. Bennett, L. R. 3 Q. B. Div. 525, dealing with a suit on an instrument stolen when incomplete, the opinion of the court sustaining the plea of the maker is based upon the theory that if the defendant was guilty of any negligence at all, it did not constitute the proximate and effective cause of the fraud, such as would estop the signer from denying delivery. In the case of Burson v. Huntington, 21 Mich. 416 (4 Am. R. 497), the pertinency of the question of such negligence was recognized, and in the opinion in that case the court said: "There may be cases where the culpable negligence or recklessness of the maker in allowing an undelivered note to get into circulation might justly estop him from setting up non-delivery, as if he were knowingly to throw it into the street, or otherwise leave it accessible to the public, with no person to guard against its abduction under circumstances when he might reasonably apprehend that it would be likely to be taken." Thus, even under the rule of the negotiable instrument law containing the provision which we have quoted, apparently comprehensive in scope and intent, we find that the courts have not failed to take into account that the principle of negligence may be involved. A signer in blank of a negotiable instrument, even though undelivered, should not under all circumstances and conditions be permitted as a matter of law to shut his eyes to the known peril imposed upon the public by the felonious taking of such an instrument signed by him when it might be that under the facts of the particular case it lay within his reasonable power and within his power alone to afford protection.

The judgment in this case being based entirely upon the holding that as a matter of law the defendant is not liable on the instrument, for the reason that the note had never been completed or delivered by defendant, and there being no finding upon the question as to whether, under the evidence, the proximate cause of the fraud lay in the felonious taking of the instrument, or whether it was occasioned by negligence on the part of the signer in permitting it to get into circulation when it was within his reasonable power to prevent it, this court will not pass upon that question as an original proposition, but remands the case in order that a

finding may be had upon the issue raised by the evidence as to whether, under all the circumstances, the defendant is or is not thus estopped from denying a valid delivery of the instrument.

*Judgment reversed. Wade, C. J., and Luke, J., concur.*