## 15631.  RYLE *v.* FARMERS AND MERCHANTS BANK OF GORDON.

There was no material error in the charge of the court as to the law applicable to the contentions of the defendant, who in her pleadings set up that she was not a joint maker but merely a surety on the note sued on (which was signed also by her son), and that the note was materially altered and the amount raised from $400 to $687, without her consent, after she signed it, and who testified that it was "just a blank

note" when she signed it at the request of her son, and that he told her that it was for a renewal of a $400 note signed by them.

The verdict for the plaintiff was authorized by the evidence.

DECIDED FEBRUARY 12, 1925.

Complaint; from city court of Macon—Judge Gunn.    April 12, 1924.

The bank sued two defendants as joint makers of a promissory note for the principal sum of $687, dated February 3, 1922. One defendant pleaded bankruptcy and proved his discharge, and the court directed a verdict in his favor. His mother, the other defendant, whose signature appeared on the face of the note above that of the son, pleaded that she was "an accommodation indorser and nothing more than a surety on a note to the" plaintiff for not only her codefendant but also another person, that "the amount of said note was $400, and the plaintiff has changed the note from $400 to $687, and released such other person;" that this change of the contract and the release of one of the principals has increased the liability and risk of the surety; that "she has given proper notice to" the other defendant "that she intends on the trial of this case to prove that she was an accommodation indorser for him on said note, and not a joint maker with him;" that she "does not know where the note was when it was changed, but she does know that it was changed after it was in the hands of the plaintiff, its agents and employees; the note was changed by raising it from $400 to $687, by changing the date from November 29, 1921, to February 3, 1922, by changing the maturity of the note from February 1, 1922, to September 1, 1922, by releasing" another named person from said note, "whose name does not now appear on the note; and said changes were made without her knowledge or consent and without any authority from her, and no one had the authority to act as her agent in making said changes in said note;" that "the defendant  .  .  did not make and execute the note sued on jointly with" the other defendant, "neither did she make said note sued on in any capacity;" that "said note is no part of her obligation in any capacity, as surety, joint maker, or in any capacity; she did not agree with the plaintiff or its agents nor with any one else, neither did she give any one authority to bind her on said note;" and that she did not "authorize any one to execute the note sued on as principal or surety or in any capacity, for her and in her stead."    At the trial the plaintiff's cashier

swore that the son's name was signed first on the note, which was then complete, and afterwards by the mother; and that the note as sued upon had been in no way changed. It appears from uncontroverted evidence that the $687 note sued on was given to the bank to renew or take up a note for $400 principal, signed by the two defendants and another person, and other notes aggregating $278 principal, signed by the son and such other person but unsigned by the mother, all of which former notes were thus taken up and marked paid on February 1, 1922. Both defendants admitted their signatures on the $687 note sued upon. The defendant mother testified, that this note was "just a blank note" when she signed it; that her son, the other defendant, told her only that he wanted her to "sign it for a renewal of the $400 note;" that she "did not know anything about any other notes;" that her son said to her, "I have got to renew that note, and I want your signature on it;" that she was "security on the first note, $400, and they wanted it renewed," and she "signed as security," that her son signed when she signed it, and carried the papers back to the bank. The son testified that his understanding with the bank was that the note sued on was to embrace and include the amount represented by all the notes previously signed by him, but testified that when he went to his mother to get her to sign the new note, he told her he "wanted to renew the $400 note, [and] did not say anything about the $287," and that he turned over to the bank's cashier "the note in blank with my name and my mother's signed to it." The jury found for the plaintiff against the defendant mother. She excepts to the refusal of a new trial.

*J. D. Hughes,* for plaintiff in error.

*Walter DeFore* and *James C. Estes,* contra.

JENKINS, P. J.  (After stating the foregoing facts.)

1. "If the fact of suretyship does not appear on the face of the contract, it may be proved by parol either before or after the judgment (the creditor not being delayed in his remedy by such collateral issue between the principal and his surety), if before judgment the surety shall give notice to the principal of his intention to make such proof." Civil Code (1910), § 3556. The record shows that notice of such intention was given to the principal in the instant case. If such a surety "is by an erroneous ruling denied the right to establish before judgment the fact thus set up, he is entitled

to a new trial." *Whitley* v. *Hudson,* 114 *Ga.* 668 (3) (40 S. E. 838). In the case here cited the alleged error was the exclusion of evidence seeking to show that the defendant had signed merely as surety. In the instant case no such evidence was excluded; but it is contended that the court erred in charging generally that, "in the event you find for the defendant, the form of your verdict would be, 'We, the jury, find for the defendant,' and in failing in the same connection to charge the jury that if they found that she was surety only, the form of their verdict would be that they found that she was surety on the note, and that the plaintiff have judgment against her as surety in the sum sued for." Even if the failure so to charge, in the absence of a written request, might be accounted error, it was, under the particular facts, without injury to this defendant; since it appears that after the other defendant, the alleged principal, had sustained his plea of discharge in bankruptcy, the court directed a verdict in his favor.

2. The delivery of an inchoate or incomplete bill or note,—as where the instrument is delivered with blanks left for the insertion of the amount or terms of payment, or where a signature on a blank paper is delivered with the intention of having a complete instrument written over it,—confers on the person to whom it is delivered presumptive authority to complete the instrument in the manner contemplated by the signer, by filling the blanks, or by writing the instrument as the case may be. *Atlanta Nat. Bank* v. *Bateman,* 21 *Ga. App.* 624 (3) (94 S. E. 853) ; 8 Corp. Jur. 182, 185; 3 R. C. L. 874, 875. These general principles, which are invoked where the person to whom a note is delivered has abused his authority, while more frequently applied where the plaintiff is a bona fide holder by transfer or indorsement (*Hancock* v. *Empire Cotton Oil Co.,* 17 *Ga. App.* 182; 3 R. C. L. 893, 86 S. E. 434), have been given application where "the plaintiff bank was merely the payee of the note which the plaintiff in error signed in blank as an accommodation indorser or surety for the maker;" and it is held that "the bank is in the position of an innocent transferee or holder as to the implied power given by the surety to the principal to fill in the blanks, . . it not appearing that the bank had knowledge that the private agreement between the surety and the principal was violated, and the filling in of the blanks being ap-

parently with such implied authority." *Thompson* v. *Bank of Chatsworth,* 30 *Ga. App.* 443, 445 (5) (118 S. E. 470).

(*a*) "Quite a distinction exists between the initial forgery or the material alteration of a completed instrument, and the filling in of blanks in an incomplete instrument by a person to whom it is intrusted by the signer." Proof of the insertion of a larger amount in the blanks of a note than that authorized by the maker "would not support a plea of non est factum" (*Hancock* v. *Empire Cotton Oil Co.,* supra; 3 R. C. L. 1003, 1004) ; but in the instant case, even if the defendant's plea of non est factum, and plea of suretyship and release from liability by reason of the plaintiff's alleged alteration of the note sued on, could be construed to cover the defense actually shown by the defendant's testimony, viz., that the amount in the note was blank at the time she signed it, and that so far as she, the surety, was concerned she did not know that the principal would authorize it to be filled out and used for more than $400, it does not appear from the record that the plaintiff bank had any knowledge of the conversation and understanding between the principal and the alleged surety, or had any reason to believe that it was not authorized to fill in the amount left blank to the figure agreed upon with the principal.

3. "One who signs or indorses a note as surety can not in defense to an action thereon, either by the innocent payee or any other bona fide holder for value, set up that the principal maker, to whom he intrusted the note, delivered it in violation of a condition that a certain other person or persons should first sign or indorse it." *Crawford* v. *Citizens & Southern Bank,* 20 *Ga. App.* 576 (3) (93 S. E. 173). "Knowledge of the facts in the holder at the time of taking must be shown." *Thompson* v. *Bank of Chatsworth,* supra. In the instant case the proof showed that neither the principal to whom the note was intrusted nor the innocent payee had made or violated any such understanding with the alleged surety that another person, whose name appeared on a previous note, for which the note sued upon was given in renewal, should also sign such renewal paper.

4. There was no proof whatever as to any alterations in the note sued on, by changing amounts or dates, or by releasing another person after he had signed the note, as set forth in the plea.

5. The court did not err in charging the issues as actually made under the defendant's proof, rather than strictly in accordance with

her unsustained plea of non est factum and release as a surety by the alleged alteration of the note and release of another alleged signer, even though the court was not required so to charge. Moreover, the court charged that the defendant "contends that the note was brought to her in blank, and that . . it was her understanding that it was for the purpose of renewing a $400 paper, and that she signed those papers in blank," and instructed the jury, "if you believe that to be the truth of the case, the defendant would be entitled to have and receive at your hands a verdict." Such instruction, without any qualifications, was much more liberal to the defendant than was required by the law and the evidence.

*Judgment affirmed. Stephens and Bell, JJ., concur.*