A98A0624. FOWLER et al. v. SMITH et al.
(498 SE2d 130)

BIRDSONG, Presiding Judge.

This appeal was transferred to this Court by the Supreme Court of Georgia. Appellants/plaintiffs Glenda Fay Fowler, Steven Anthony Smith and Larry Smith appeal the final judgment of the superior court entered on a jury verdict in favor of appellees/defendants, Ruth Fuller Smith, James Don Smith individually and as administrator of the estates of Troy A. Smith and Ethel J. Smith, and United States Fidelity & Guaranty Company, and from a grant of a motion for directed verdict in behalf of appellees/defendants Fidelity Federal Savings Bank and Fleet Real Estate Funding Corporation.

Ethel Smith died intestate in January 1992, survived by her husband, Troy Smith, and seven children. Troy Smith died intestate in November 1992. Their estates included a 12.17-acre tract on which was a house, barn and other structures. The house was in poor condition, and the barn and other structures were dilapidated. During probate a dispute arose among various heirs as to the disposition of their parents' estate. During a hearing before the probate court in March 1995 on a petition for an accounting and final settlement, a recess

was taken to allow the parties an opportunity to meet and attempt settlement. James Smith, administrator of his parents' estate, met with his three appellant siblings and mutual agreements were reached between appellants and James regarding property disposition. It was agreed that James would receive a truck; sisters Connie and Glenda would receive the household furnishings; brothers Larry, Steve and James would receive the "outside" equipment and tools; and, to "keep the family together," a "deal" was made that James would be allowed to purchase the real estate, subject to the approval of the court, provided he could obtain financing. However, the siblings did not stipulate that any particular price would be paid for the house or require James to discuss purchase price with them before consummating a purchase. The siblings reported to the probate judge that the case had been settled and that James would buy the house. This agreement was never reduced to writing. Subsequent to the agreement, James listed the house with a real estate broker with instruction to sell it if he could not obtain financing or if someone else was willing to pay more than he. The realtor recommended that the house be priced under quick sale conditions, that is, priced to be sold within 30 days, because it was unoccupied and was deteriorating with time. The broker's market analysis determined that the house had a top end sale or fair market value of $54,200 with an expected quick sale price of $50,000 to $52,000. James obtained bank financing and put a contract on the house for $51,000 with direction to the broker to sell it to anyone who offered more. The house remained on the market under multiple listing until closing, but no other purchase offers were received. James and his wife, Fuller Smith, ultimately bought the house at a private sale for $51,000. After closing James re-roofed a portion of the house, replaced some rotted decking, and supported the north-side rafters because of a sway in the roof.

In processing James' request for financing, the bank appraiser appraised the property at $70,000 based on his assumption that the house was in average condition; however, he did not inspect the interior of the house. Appellees/defendants retained a second appraiser who testified that the house was worth $59,000, "as is." However, this appraisal was made after James replaced part of the roof of the house. A motion to approve the sale was filed with the probate court which issued an order approving the sale that same day. It was stipulated by counsel that no notice was given to any heir, notice was never published in the newspaper, and no hearing was held on the petition. James financed the property purchase through Fidelity Federal Savings Bank (Fidelity), which subsequently was merged into Regions Bank. A security deed was conveyed to Fidelity who assigned it to Fleet Real Estate Funding Corporation (Fleet). (Regions Bank, Fidelity, and Fleet hereafter are collectively referred

to as "Bank.")

Three of the heirs appealed the probate court's order to sell to the superior court and brought suit to set aside the deeds and for defalcation of fiduciary duty. The superior court denied appellants/ plaintiffs' motions for summary judgment. At the close of appellants' case, the Bank made a motion for directed verdict which was granted. Appellants' motion for directed verdict to set aside the deeds was denied; the jury returned a verdict in favor of the remaining defendants. Final judgment was entered for the defendants. On appeal, appellants enumerates 16 errors. *Held*:

1. (a) We decline to address appellants' enumerations of error 2, 4, 6, 8, 12, and 15. "Denial of a motion for summary judgment is rendered moot by the court's entry of judgment on the verdict." *Ga. Power Co. v. Irvin*, 267 Ga. 760, 767 (6) (482 SE2d 362), citing *Kicklighter v. Woodward*, 267 Ga. 157, 162 (5) (476 SE2d 248). Thus, "[a]n appellate court . . . will not review the denial of a motion for summary judgment following a trial on the merits." *Acuff v. Proctor*, 267 Ga. 85, 86 (5) (475 SE2d 616).

(b) Appellants have filed several separate enumerations (see generally OCGA § 5-6-40) asserting on various grounds that the trial court erred in denying plaintiffs' motion for directed verdict and in granting the Bank's directed verdict motion. In determining whether a trial court erred by denying a motion for a directed verdict, the standards in *Canal Ins. Co. v. Wilkes Supply Co.*, 203 Ga. App. 35, 36 (2) (416 SE2d 105) apply. Further, in reviewing the denial of a motion for directed verdict an appellate court must determine "whether there is any evidence to support the jury's verdict." *Ga. Power Co. v. Irvin*, supra at 762 (1). "We must construe the evidence in the light most favorable to the prevailing party" (id.); and "[u]pon appellate review of a denial of a motion for directed verdict, this court will consider all relevant admissible evidence of record whether admitted or elicited during the plaintiffs' case in chief or subsequent thereto." *Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.*, 189 Ga. App. 573, 576 (3) (b) (377 SE2d 15).

Regarding the granting of a motion for directed verdict, "[i]f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). A party is not entitled to a directed verdict if "there was some evidence to support the jury's verdict." *Southern Water Technologies v. Kile*, 224 Ga. App. 717, 719 (1) (481 SE2d 826), citing *Carden v. Burckhalter*, 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (any evidence to support a contrary verdict test).

2. Appellants enumerate that for various grounds the trial court erred in denying their motion for directed verdict against the admin-

istrator, his surety, the purchasers (administrator and his wife), and the Bank, and in granting the Bank's motion for directed verdict. The parties have cited no case that is directly on point with all the relevant facts attendant in the case at bar. However, we find that those cases cited by appellees/defendants and which are hereafter discussed are more persuasive in the disposition of this controversy.

(a) Appellants entered a "compromise" agreement with appellee James as to the disposition of certain of the family property and agreeing to allow James to buy the real property at issue, and this agreement "was reported to the probate court for its approval. " '[I]n equity the termination of family controversies affords a consideration which is sufficient to support a contract made for such purpose.' " *Fulford v. Fulford*, 225 Ga. 9, 16 (3) (165 SE2d 848). Compromises, especially of family controversies, are favored by the courts as tending to prevent litigation. See id. " 'Nor is it necessary that a contract shall state definitely and specifically all facts in detail to which the parties may be agreeing, but as to such matters it will be sufficiently definite and certain if it contains matter which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves. That is certain which may be made certain.' " Id. at 17. By their compromise agreement the parties in essence mutually agreed that, for purpose of family unity, the property dispositions agreed upon by them were those "most advantageous to the estate," within the meaning of OCGA § 53-8-20 et seq. Thus, the fact that a higher price might have been obtained if someone other than James had purchased the property is, standing alone, of no legal consequence in this particular case. Appellants' contention that no binding contract was entered due to a lack of mutual assent as to the sales price of the realty is without merit. The record reveals ample evidence from which the trial court could conclude that the purchase of the premises by James was an inseparable part of the oral compromise agreement entered by the parties to keep the family together, and that it was implicitly intended that the property was to be sold for a fair price. In Georgia, every contract whether oral or written includes the implied duty of good faith. See, e.g., *West v. Koufman*, 259 Ga. 505, 506 (384 SE2d 664). Good faith in a compromise agreement between relatives *at most* would require that James purchase the house for reasonable value under the attendant circumstances. See also OCGA § 9-2-7 (implied promise to pay for transfer of property). Assuming without deciding that James was required to pay a reasonable value for the property, whether he did so gave rise to an issue of fact for jury resolution. See *Century 21 &c. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435). Evidence exists that the home was unattended and in a deteriorating condition, and that the reasonable sales price for a quick sale

(sale within 30 days) was in a range of $50,000 to $52,000. James paid a sales price within that range. The record supports a finding that James acted in good faith in listing the property for quick sale and purchasing it for an amount within the range of a reasonable quick sale price.

(b) An agreement for compromise, such as exists in this case, need not be in writing, especially when the parties orally affirm the existence thereof before the trial court. See *Fulford,* supra at 17; but cf. *Beckworth v. Beckworth,* 255 Ga. 241, 245 (3) (a) (336 SE2d 782). Additionally, appellees relied to their detriment on the conduct of the appellants and, in reliance on the compromise agreement announced before the probate court, purchased the property. Assuming arguendo, the statute of frauds had required that such agreements be in writing, appellants by their conduct waived their rights to contest either the existence or validity of this compromise agreement. See generally *Mauldin v. Weinstock,* 201 Ga. App. 514, 520 (4) (411 SE2d 370) and progeny; *Fernandez v. Bank of Dahlonega,* 217 Ga. App. 739, 743 (4) (b) (459 SE2d 424); *Crotty v. Crotty,* 219 Ga. App. 408, 412 (3) (465 SE2d 517); see *Guthrie v. Moran,* 192 Ga. 607 (1), 613 (15 SE2d 890).

(c) As there existed a valid compromise agreement between the siblings, a public or private sale in accordance with the provisions of OCGA § 53-8-34 is not required. Compare *Hennessey v. Froehlich,* 219 Ga. App. 98, 100 (464 SE2d 246) and *King v. King,* 199 Ga. App. 496, 498 (2) (405 SE2d 319). The probate court did not lack jurisdiction as asserted by appellants.

3. The trial court did not err in granting the motion for directed verdict of appellee Bank. Pretermitting the issue whether appellants had an adequate remedy at law which would preclude equitable relief is the issue whether the Bank was protected as an innocent purchaser. In view of our holdings in Division 2, above, James had an interest in the subject property which he could legally convey to the Bank, and the order of the probate court was not irregular on its face. The Bank had no actual or constructive notice of wrongdoing of appellants because there was none. *Powell v. Harrison,* 180 Ga. 197 (178 SE 745) is distinguishable and not controlling. Additionally, as the Bank obtained its interest for value, a presumption of good faith attached to the Bank which is not overcome by any evidence of record. See *Anderson v. Streck,* 190 Ga. App. 224, 226 (378 SE2d 526). The security deed is not void or voidable as to the Bank as its security interest was obtained as an innocent purchaser for value. Cf. *Lyday v. Burkes,* 261 Ga. 465, 466 (405 SE2d 472). If a judgment entered pursuant to the granting of a directed verdict is right for any reason, it will be affirmed. *Star Mfg. v. Edenfield,* 191 Ga. App. 665, 668 (382 SE2d 706).

4. Appellees were the prevailing parties in this suit. But, even had appellants prevailed, it would have rested in the trial court's discretion whether to award attorney fees pursuant to the equitable "common fund" doctrine. *Ewing v. First Nat. Bank &c.*, 209 Ga. 932, 933-934 (76 SE2d 791) (trial court has discretion whether to award attorney fees from common fund or by proportional contribution from those who accept the benefits of plaintiff's efforts); compare *Walker v. Walker*, 266 Ga. 414 (2) (467 SE2d 583).

Appellants' 16 enumerations of error are without merit.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED FEBRUARY 26, 1998 

*David J. Blevins*, for appellants.
*Michael A. Corbin*, for appellees.