*Carlock, Copeland, Semler & Stair, Johannes S. Kingma, Shannon M. Sprinkle, Owen, Gleaton, Egan, Jones & Sweeney, Roger E. Harris*, for Devlin et al.

A04A1943. WISE et al. v. TIDAL CONSTRUCTION COMPANY, INC.
(608 SE2d 11)

ANDREWS, Presiding Judge.

Mary Rose Wise and Nell Lackman, her mother, appeal from the trial court's direction of a verdict in favor of Tidal Construction Company, Inc. (Tidal) in their suit arising from claimed defective construction of a home owned by them.[1]

"A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter*,

---

[1] This matter was previously before us in *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670 (583 SE2d 466) (2003), where we concluded Tidal had waived its right to demand arbitration by engaging in discovery and other pretrial proceedings.

214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). On appeal, we conduct a de novo review and will uphold the grant of a directed verdict only if all the evidence demands it. Id.

Tidal purchased the lot in Richmond Hill upon which the home was built from developer Charles Stafford on July 21, 1995. A building permit was obtained by Tidal on November 19, 1995. The lot was cleared and the site was prepared by Tidal's subcontractor. The concrete slab foundation, including footers, was poured in January 1996. On March 31, 1997, Mary Rose[2] (not yet married to Michael Wise) and her mother bought the home from Tidal for $138,900.

On June 15, 1998, Wise saw a four to five-inch sink hole in the rear portion of her backyard between her patio and privacy fence. She walked over to it and the hole caved around her up to her knees. Wise immediately contacted Tidal, which disclaimed any knowledge of why the yard would be caving in. She then contacted Stafford, and he sent a truck load of sand, which was poured into the sinkhole to fill it. Nonetheless, the hole caved in again six months later and was filled again.

On October 6, 2002, Michael Wise, then Wise's fiancé, dug up four portions of her backyard with a backhoe, including the sinkhole area. In these four areas, Michael Wise found organic debris, consisting of pine limbs and pine straw, which he removed from the holes. Michael Wise dug up some fairly large stumps from the sinkhole area, but nothing of that magnitude from the other three holes. In the hole dug closest to the house, near the master bedroom and chimney, a pine tree limb was found and appeared to extend partially under the home. Michael Wise also dug by hand around the foundation and removed all organic material he found near it. There is a lip of concrete from the foundation which extends beyond the brick veneer on the exterior of the house. When Michael Wise stated that he found limbs and pine straw "under the footings," he acknowledged that he was referring to material under the concrete lip. Michael Wise also acknowledged that, up to the time of trial in November 2003, there had been no further sinking in any portion of the yard or cracking or failure of the slab.

S M & E, a drilling company, performed hand augurings and used very large core drills to drill into the ground. No landfill was located anywhere around the perimeter of the house.

Wise contacted Whitaker Labs, an engineering firm in Savannah. Carroll Crowther, a civil engineer with a specialty in soil mechanics and the use of soils to support structures, was accepted by

---

[2] Referred to hereafter as "Wise."

the court as an expert in the field of engineering. He inspected the house in 2001, and did test soil borings around the house.

Crowther acknowledged that he did not work with or report to a structural engineer, did not hold himself out as a contractor, and could not establish the standard of care required of a contractor. Further, he had no personal knowledge of how Wise's house was constructed and did not know which codes were applicable to one- and two-family dwellings in Richmond Hill, but said that decision would be up to the code administrator. The parties stipulated that the Council of American Building Officials (CABO) code was applicable to dwellings in Richmond Hill. Crowther stated that "the building inspector, whoever he was, believed that the [CABO] code was being complied with."

Crowther also admitted that he did not know if the site where Wise's slab was poured had been scraped with a tractor or bulldozer with a blade before the pour, but acknowledged that this was common practice. He further acknowledged that the Richmond Hill building inspector would inspect the site after this had been done and the footings dug, before the slab was poured. Also, he stated that "[v]irgin soils in this area of Richmond Hill are inherently stable."

Based on his review of the videotapes of Michael Wise's excavation in the yard and his own borings, Crowther opined that the rear area of the yard had not been adequately prepped and that organic debris was under a third of the concrete slab. Crowther acknowledged that, as of trial, he had observed no signs of settlement in the slab or the yard around it or damage to the home. Crowther's sole recommendation for correction of the problem was that, in the area where he observed the one limb which, in his opinion, was going under the footer, the limb be removed and the area undercut, the dirt be removed, and the area backfilled with "flowable fill," a low strength concrete that can flow under the footings and fill back in.

Based on this testimony of Crowther, Tidal objected to the introduction of the testimony of Alan Mock, owner of Mock Construction Company, who had, based solely on a drawing of the excavation spots prepared by Crowther, prepared an estimate of what it would cost to excavate under the entire one-third of the slab where debris was opined to exist, shore that area up and replace the soil under it, basically deconstruct that portion of the house over that area, and rebuild it. His estimate was $199,226.06. Wise testified that, in her opinion, the fair market value of the house in 2003 was between $150,000 and $160,000.

The trial court sustained this objection and then granted the motion for directed verdict of Tidal.

1. Wise's first enumeration of error is that the trial court erred in directing a verdict based on the possibility that the repair cost may be greater than the home's fair market value.

Wise proceeded on breach of contract and negligent construction theories.[3] No breach of contract was demonstrated, leaving only the negligence claim.

(a) The motion for directed verdict was premised on Wise's failure to prove any demonstrable damages to the home by any breach of duty by Tidal and that, even if a breach were shown, the only damages testified to by Crowther, the needed removal of the one limb and slurrying, were not the basis for the estimation of repair costs made by Mock.

In her second enumeration of error, Wise argues that these two bases for the directed verdict are all we may consider. This, however, is incorrect.[4] "If a judgment entered pursuant to the granting of a directed verdict is right for any reason, it will be affirmed. *Star Mfg. v. Edenfield*, 191 Ga. App. 665, 668 (382 SE2d 706) [(1989)]." *Fowler v. Smith*, 230 Ga. App. 817, 821 (3) (498 SE2d 130) (1998). See also *Looney v. M-Squared*, 262 Ga. App. 499, 505, n. 18 (586 SE2d 44) (2003).

(b) " 'Actionable negligence involves, first, the existence of a duty; second, the omission to exercise ordinary and reasonable care in connection therewith; and third, injury resulting in consequence thereof.' *Atlanta Nat. Bank v. Bateman*, 21 Ga. App. 624, 628 (94 SE 853) [(1918)]. See also [OCGA § 51-1-1]." *Patillo v. Thompson*, 106 Ga. App. 808, 811-812 (4) (128 SE2d 656) (1962).

" 'Negligence is not to be presumed, but is a matter for affirmative proof. In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence.' [Cit.]" *Neal v. Miller*, 194 Ga. App. 231, 232 (390 SE2d 125) (1990). See, e.g., *Clayton v. Larisey*, 190 Ga. App. 512, 514 (379 SE2d 789) (1989).

As set out above, there was no showing by Wise of the duty owed by Tidal, since Crowther admitted he did not know the standard of care owed by a contractor.

Therefore, the grant of directed verdict on this ground was correct.

(c) Even assuming, without deciding, that some breach of duty had been shown, there was no evidence regarding the cost of the only

---

[3] As noted in *Wise*, supra at 672 (1), no breach of warranty claim was made.

[4] When appealing the *denial* of a motion for directed verdict, an appellant may not raise for the first time on appeal a ground not raised in the original motion. *Magnus Homes v. DeRosa*, 248 Ga. App. 31, 33 (2) (545 SE2d 166) (2001).

repair recommended by Crowther. Therefore, the grant of directed verdict for failure to prove damages caused by the breach was correct.

(d) Regarding Wise's claim that the trial court erred in granting directed verdict because the potential repair costs estimated by Mock exceeded the fair market value of the home, even had Mock's estimate borne any relationship to Crowther's proposed fix of the problem, there was no error.

> Georgia law recognizes that the cost to repair or restore land may be an appropriate measure of damages as long as restoration would not be an "absurd undertaking." *Atlanta Recycled Fiber Co. v. Tri-Cities Steel Co.*, 152 Ga. App. 259 (3) (262 SE2d 554) (1979); *Southern Ry. Co. v. Wooten*, 110 Ga. App. 6 (5) (137 SE2d 696) (1964). This is true even though repair costs exceed the diminution in value. E.g., *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344 (4) (223 SE2d 732) (1976). *The cost of restoration may not be disproportionate to the diminution in the property's value. Rather, " 'the cost of repair must be reasonable and bear some proportion to the injury sustained.'* [Cit.]" *Empire Mills Co. v. Burrell Eng. &c. Co.*, 18 Ga. App. 253, 256 (89 SE 530) (1916).

(Emphasis supplied.) *Ga. Northeastern R. v. Lusk*, 277 Ga. 245, 247 (2) (587 SE2d 643) (2003). See also *City of Atlanta v. Conner*, 262 Ga. App. 423 (585 SE2d 634) (2003); *Magnus Homes*, supra at 32 (1); *Ryland Group v. Daley*, 245 Ga. App. 496, 498 (1) (a) (537 SE2d 732) (2000).

2. Finally, Wise contends that the trial court erred in excluding national standards, the 1994 Standard Building Code, which were illustrative of the standard of care.

The trial court did, initially, take judicial notice that the Standard Building Code might apply to some construction in Bryan County. Tidal, however, filed its motion in limine to exclude reference to this code, on the basis of an affidavit of the Richmond Hill building inspector that it did not apply to single family dwellings. Crowther was unable to show otherwise.

There was no error. *Dayoub v. Yates-Astro Termite &c.*, 239 Ga. App. 578, 581 (2) (b) (521 SE2d 600) (1999).

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 8, 2004 —
RECONSIDERATION DENIED DECEMBER 2, 2004 — ■

*Eugene C. Brooks IV*, for appellants.
*Lee C. Mundell*, for appellee.