Present:  Hassell, C.J., Keenan, Kinser, Lemons, Goodwyn,
          and Millette, JJ., and Russell, S.J.

NORFOLK AND PORTSMOUTH BELT
LINE RAILROAD COMPANY                         OPINION BY
                              SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 072041                    October 31, 2008

JOHN R. WILSON

          FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                      Mark S. Davis, Judge

     This is an appeal from a judgment for the plaintiff for

personal injuries covered by the Federal Employers' Liability

Act (FELA), 45 U.S.C. §§ 51 through -60, as amended.  The

defendant assigns error to four of the trial court's rulings

on the admissibility of evidence.

                      Facts and Proceedings

     Under familiar principles of appellate review, we will

state the facts in the light most favorable to the plaintiff,

the prevailing party at trial.  Little v. Cooke, 274 Va. 697,

703, 652 S.E.2d 129, 133 (2007).  On August 11, 2003, John R.

Wilson was employed as a conductor for the Norfolk and

Portsmouth Belt Line Railroad Company (Belt Line), his

employer for nearly 30 years.  At the time of his injury,

Wilson was riding on the side of a railroad boxcar that was

moving along a switching track.  The track ran parallel to a

chain link fence, eight feet tall, supported by two-inch steel

posts anchored in concrete.  Wilson's purpose was to couple

the boxcar he was riding to another car that was stationary on the same track. For most of its length, the fence was located approximately eight feet away from the centerline of the track, but one of the posts supporting the fence was bent inward, toward the track, one to two feet, a condition that had existed for more than two years at the time of Wilson's injury. As the car Wilson was riding passed the bent post, his left upper arm, near the shoulder, struck it, resulting in his injuries.

Wilson brought this FELA action against the Belt Line, alleging that the Belt Line's business and his duties were in furtherance of interstate commerce and that the Belt Line had been negligent in failing to provide him a safe workplace. Specifically, he contended that the Belt Line had failed in its duty properly to inspect and maintain its track and right-of-way, and to eliminate dangerous "close clearances" along the track.

At trial, Wilson introduced the testimony of Raymond A. Duffany, who qualified as an expert witness on the prevailing practices and safety standards in the railroad industry nationwide with respect to "close clearances." Duffany testified that because railroad workers must often ride on the sides of rail cars in the course of their work, eight feet from the centerline of the track to any adjacent fixed object

2

was the "absolute minimum" for safe clearance and that any distance less than eight feet would be a "close clearance" and "very dangerous, life-threatening."

Over the Belt Line's objection, Duffany testified that, although Virginia has no law governing such clearances, 38 other states have such laws, that none of those laws permit clearances less than eight feet, and that 29 of those 38 state laws require clearances greater than eight feet. The Belt Line moved the court to strike Duffany's testimony regarding the laws of other states as having no relevance to the law of Virginia but likely misleading the jury to think that those foreign laws governed the safety standard prevailing in Virginia.

At Wilson's request, the court granted Instruction No. 41, which told the jury, "You may consider custom and usage in the railroad industry and close clearance laws in other jurisdictions as evidence of what may be reasonable in a given situation, but are free to give this evidence whatever weight you [may choose] to give it. You must decide what was reasonable under the circumstances of this case based upon all of the evidence as you find it."  (Emphasis added.)

The jury returned a verdict for Wilson in the amount of $330,000, upon which the court entered final judgment. We awarded the Belt Line an appeal. The Belt Line asserts four

3

assignments of error: (1) Admission of evidence concerning the "close clearance" laws of states other than Virginia, (2) admission of Duffany's expert testimony despite the plaintiff's failure to comply fully with the expert disclosure requirements of Rule 4:1(b)(4)(A), (3) admission of Duffany's testimony without requiring a foundation for opinions regarding close clearance practices in Virginia, and (4) admission of evidence of conditions that did not cause the plaintiff's injury. This fourth assignment of error relates to the court's admission, over the Belt Line's objection, of evidence that some additional sections of the fence and its supporting posts, beyond the point of Wilson's impact, were less than eight feet from the centerline of the track even though those sections were upright and undamaged.

Analysis

"Generally, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." John Crane, Inc. v. Jones, 274 Va. 581, 590, 650 S.E.2d 851, 855 (2007). "While a trial court has no discretion to admit clearly inadmissible evidence, a great deal must necessarily be left to the discretion of the [trial court], in determining whether evidence is relevant to the issue or not." Id.

4

(citation and internal quotation marks omitted). While all irrelevant evidence is inadmissible, e.g., Pruett v. Commonwealth, 232 Va. 266, 284, 351 S.E.2d 1, 12 (1986), evidence that is factually relevant also must be excluded from the jury's consideration if the probative value of that evidence is substantially outweighed by the danger of unfair prejudice. Gamache v. Allen, 268 Va. 222, 227, 601 S.E.2d 598, 601 (2004); Walker v. Commonwealth, 258 Va. 54, 68, 515 S.E.2d 565, 573 (1999); Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986).

We turn to the first assignment of error, relating to the admission of evidence of the statutes of other states. While it is undisputed that Virginia has no statute regulating close clearances along railroad tracks, Wilson contends that under Virginia law as well as under the FELA, a railroad company has a duty to exercise reasonable care for the safety of its employees, which includes the duty to provide them a reasonably safe place in which to work. Wilson argues that the standard by which that duty is measured with respect to close clearances is a nationwide standard fixed by the prevailing practice in the railroad industry. The statutes of 38 states on the subject of close clearances, Wilson contends, are illustrative of the prevailing standard and relevant to prove its existence.

Inapplicable statutes are, in most circumstances, irrelevant to the proof of the standard of care in a negligence case. In Perlin v. Chappell, 198 Va. 861, 96 S.E.2d 805 (1957), the owner of a stockyard in the City of Norfolk failed to prevent the escape of a frightened 1100-pound heifer from a fenced enclosure. The animal jumped out of the enclosure and ran into the plaintiff, injuring him. Id. at 863, 96 S.E.2d at 807-08. The stockyard owner argued that he was absolved from negligence because the evidence showed that all his fences were "lawful," in that they were at least five feet high, bringing them into compliance with the then applicable provisions of former Code §§ 8-866 to 8-905. This Court held that the statutes were irrelevant to the stockyard owner's duty to exercise ordinary care because they were inapplicable. The Court wrote: "A complete answer to this line of argument is that [those] statutory provisions, dealing with lawful fences and the trespass of stock[,] are applicable within counties and not applicable within cities and towns." 198 Va. at 864, 96 S.E.2d at 808 (citations omitted).

A statute that establishes a standard of conduct may be considered as evidence of negligence on behalf of one for whose benefit it was enacted, if its breach was a proximate cause of the injury of which he complains. See McGuire v.

Hodges, 273 Va. 199, 206, 639 S.E.2d 284, 288 (2007).  A statute inapplicable to the case, however, is inadmissible. Any relevance it might have would be substantially outweighed by the prejudicial effect of admitting it.  Ellis v. Caprice, 233 A.2d 654, 662 (N.J. App. Div. 1967).  See also Wise v. Tidal Constr. Co., 608 S.E.2d 11, 15 (Ga. Ct. App. 2004) (finding no error in trial court's exclusion of National Standard Building Code, inapplicable to the property in question, as illustrative of local standard of care).

In Trimarco v. Klein, 436 N.E.2d 502 (N.Y. 1982), the Court of Appeals of New York considered an analogous case. The plaintiff, injured by the breaking glass of a bathtub enclosure, contended that the defendant landlord had violated a duty to exercise ordinary care by failing to install tempered safety glass or plastic instead of the ordinary glass that caused his injury.  Id. at 503.  The plaintiff presented evidence that such safer materials had been available for over 20 years and that their use had, long before his injury, become the prevailing custom and usage in the local building industry.  The plaintiff also offered, and the trial court admitted in evidence, two New York statutes mandating the use of shatterproof glazing materials for bathtub enclosures.  The statutes applied only prospectively and did not affect the landlord's property, which was built before the statutes'

7

effective date. Id. at 503-04. The statutes, however, were admitted as evidence of the industry standard. The trial court instructed the jury that evidence relating to custom and usage was not alone conclusive, but that the issue before them was "the reasonableness of the defendant's conduct under all of the circumstances." Id. at 506. The jury returned a verdict for the plaintiff. The Court of Appeals reversed and remanded the case for a new trial, holding that even though the plaintiff had presented evidence of custom and usage sufficient to take the case to the jury, and even though the jury had been correctly instructed, the admission of the inapplicable statutes into the case was reversible error. The statutes protected those whose shower glazing was installed after the effective dates of the statutes, a class to which the plaintiff did not belong. The court commented: "[I]t cannot be said that the statutes, once injected into the adversarial conflict, did not prejudice the defendants." Id. at 506-07.

Statutory law, as the considered judgment of the elected representatives of the people, properly commands the respect of jurors. Evidence of statutory law that does not apply to the case on trial, but seems to support the position of one party, is likely to be both misleading to the jury and prejudicial to the opposing party. We agree with the courts

that have considered the question and hold that inapplicable statutes are inadmissible as proof of the standard of reasonable conduct in a negligence case. For that reason, we will reverse the judgment and remand the case to the circuit court.

The Belt Line's second assignment of error, relating to inadequate pretrial disclosure of Duffany's expert testimony, is rendered moot by the reversal of the case. If Duffany should testify in future proceedings, the substance of his evidence has now been fully disclosed.

We find no merit in the Belt Line's third assignment of error, relating to Duffany's foundation for expert opinion as to the prevailing industry standard for close clearances in Virginia. Duffany expressed the opinion that the same standard prevailed in all states and he explained that standard in detail. That was a sufficient foundation for his opinion. See Christian v. Surgical Specialists of Richmond, 268 Va. 60, 65-66, 596 S.E.2d 522, 525 (2004) (opinion permitted where national and Virginia standards coincide); Morgen Indus. v. Vaughan, 252 Va. 60, 64-66, 471 S.E.2d 489, 491-92 (1996) (national standards relied upon by expert whose testimony established unreasonable dangerousness of a product).

The Belt Line's fourth assignment of error relates to the circuit court's admission of evidence that the fence was less than eight feet from the centerline of the track at various points past the point of Wilson's impact. We find no error in the admission of that evidence. The FELA imposes responsibility on a railroad for dangerous conditions existing in areas where its employees are required to work, provided the dangerous conditions are known to the railroad or could have been discovered in the exercise of reasonable diligence. See Norfolk & W. Ry. Co. v. Hodges, 248 Va. 254, 260-61, 448 S.E.2d 592, 596 (1994); Syverson v. Consol. Rail Corp., 19 F.3d 824, 826 (2d Cir. 1994). See also Urie v. Thompson, 337 U.S. 163 (1949) (negligence, within the meaning of the Federal Employers' Liability Act, attached if respondent "knew, or by the exercise of due care should have known," of the dangerous condition).

The plaintiff's evidence showed that a derailment had occurred 11 months before Wilson's injury, causing damage to the fence and requiring replacement of the track for a considerable distance from and beyond the point of Wilson's injury. The track had been replaced closer to the fence than it had been before the derailment, and even undamaged fence posts remained closer than eight feet from the centerline where the track had been replaced. This evidence was relevant

10

because it tended to show the Belt Line's failure to inspect its right of way and to take reasonable action to correct any dangerous conditions such an inspection would have revealed. The evidence was probative on the issue of the Belt Line's notice, or constructive notice, of the existence of the dangerous condition that caused Wilson's injury.

## Conclusion

For the reasons stated, we will affirm the judgment of the circuit court with respect to assignments of error three and four, reverse the judgment for error with respect to the first assignment of error, and remand the case for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>

11