FAD LIMITED PARTNERSHIP AND
BELTWAY MANAGEMENT, INC.

V.

MARGARET FEAGLEY

Record No. 861018

March 3, 1989

Present: All the Justices

*Michael L. Zimmerman (Brault, Palmer, Grove & Zimmerman*, on brief), for appellants.

*Stephen A. Armstrong (Robert B. Machen*, on brief), for appellee.

WHITING, J., delivered the opinion of the Court.

In this case, we decide whether a landlord had a duty to remove ice from the porch and steps of an apartment house while moisture was still falling and freezing.

On December 28, 1983, Margaret Feagley, a tenant in a large apartment complex owned by FAD Limited Partnership and managed by Beltway Management, Inc. (the landlord), suffered a compression fracture in her upper back when she fell on the icy surface of the front porch of her apartment house. Feagley sued the landlord. A jury returned a verdict in favor of Feagley in the sum of $30,000. The landlord appeals the judgment entered upon the verdict, contending that the trial judge erred in submitting the issue of its negligence to the jury.

Well-established appellate principles control our consideration of the evidence. Because Feagley has recovered a verdict on the issue of the landlord's negligence, we view the facts on that issue in the light most favorable to her. *Litchford* v. *Hancock*, 232 Va. 496, 497, 352 S.E.2d 335, 336 (1987).

Mary Ellen Golden, a neighbor of Feagley, testified that at 11:00 p.m. the night before Feagley fell, it was drizzling, and that the front steps of the apartment house were icy. The next morning, the front steps were icy when Golden left at 7:30 a.m., and again at 8:00 a.m. when she returned. Although Golden testified that moisture was not falling when she left, she said that it was drizzling when she returned.

Just before she left her apartment about 8:45 a.m. on the morning she fell, Feagley looked out of her second story apartment window and noticed it was cold and wet outside. At trial, she did not remember whether it was raining that morning. Just after she had taken three steps across the front porch and was reaching for the handrail, Feagley fell on the icy porch. Feagley did not return to her apartment but was taken to the hospital.

Jerry L. Ansley, a maintenance man employed by the landlord, and William Frank Conard, the landlord's maintenance engineer, came to Feagley's apartment that morning about 8:15 a.m. in response to her call about a stopped-up toilet. Ansley testified that it was misty when they walked to the apartment, and he noticed ice around the rails of the porch as he went in the apartment house but saw none on the steps. About 20 minutes later, when Ansley

left to handle another matter, everything was "freezing over as soon as the rain hit."

Conard, who thought he and Ansley arrived at Feagley's apartment about 8:30 a.m., testified it was starting to mist as they walked to the apartment but that there was no ice. Conard did not know Feagley had fallen on the steps until after he finished unstopping Feagley's toilet and returned to the office about 10:30 a.m. When he left the Feagley apartment, it was "pouring down rain and the ice came."

■ Only two people testified about the weather conditions about the time Feagley fell. Golden said it was "drizzling," and Ansley said it was "raining" just before Feagley fell. Feagley testified that she did not "remember" if she had seen it rain that morning. Therefore, the evidence that moisture was falling just before Feagley fell was unrefuted.

■ Although the trial court recognized that a landlord has a reasonable time after a storm has stopped in which to remove ice from porches and steps, *Apartments, Inc.* v. *Bisson*, 207 Va. 474, 478, 150 S.E.2d 540, 542 (1966); *Walker* v. *The Memorial Hospital*, 187 Va. 5, 13, 45 S.E.2d 898, 902 (1948), it held that the jury should decide whether the "falling weather" was sufficient to constitute a storm. We find this was error.

Webster defines "storm" as "to rain, hail, snow, or sleet, esp. in a violent manner or with high wind." *Webster's Third New International Dictionary* 2252 (1986). We regarded a freezing rain as a storm in *Walker*. There we used the word "storm" several times in describing the weather conditions at the time. We also said "in the view we take of the case, the question [is] whether the hospital was under a duty to the plaintiff to remove the sleet or take any other corrective action with respect to same until a reasonable time had elapsed after the freezing rain had ceased to fall . . . ." *Id*. at 22, 45 S.E. 2d at 907.

■ In our view, for the reasons set forth in *Bisson* and *Walker*, the landlord had no duty to remove the ice during the time moisture was falling and freezing on the ground, and the trial court erred in submitting that issue to the jury. Accordingly, we will reverse the judgment of the trial court and enter final judgment for the landlord.

*Reversed and final judgment.*