Present:  All the Justices

FRANCESCA AMOS

                         OPINION BY JUSTICE CYNTHIA D. KINSER
v.   Record No. 972018           September 18, 1998

NATIONSBANK, N.A.

              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                      Charles E. Poston, Judge


     Francesca Nicole Amos brought suit against NationsBank, N.A.

(NationsBank) to recover damages for personal injuries she

sustained when she fell on ice located on NationsBank's premises.

A jury returned a verdict in favor of Amos.  The trial court,

however, set aside the verdict and entered final judgment in favor

of NationsBank.  Amos appeals from that judgment.  Because we find

the evidence insufficient as a matter of law to establish that

NationsBank had a duty to remove ice and snow from its premises at

the time of Amos' fall, we will affirm the trial court's judgment.

     Amos was an invitee on NationsBank's premises when she fell.

Therefore, NationsBank owed her the duty of using ordinary care to

maintain its premises in a reasonably safe condition and to warn

her of any hidden dangers. Wynne v. Spainhour, 215 Va. 16, 17,

205 S.E.2d 634, 635 (1974).  However, a business establishment,

landlord, common carrier or other inviter may wait until the end

of a storm and a reasonable time thereafter before removing ice

and snow from an outdoor entrance, walk, platform or steps.

Walker v. The Memorial Hospital, 187 Va. 5, 13, 45 S.E.2d 898, 902

(1948).  Accord FAD Ltd. Partnership v. Feagley, 237 Va. 413, 415, 377 S.E.2d 437, 438 (1989); Mary Washington Hosp., Inc. v. Gibson, 228 Va. 95, 101, 319 S.E.2d 741, 744 (1984).  In other words, NationsBank "had no duty to remove the ice during the time moisture was falling and freezing on the ground."  Feagley, 237 Va. at 415, 377 S.E.2d at 438.

As plaintiff, Amos bears the burden of establishing that, at the time of her fall, NationsBank had the duty to clear its premises of ice and snow.  Burns v. Johnson, 250 Va. 41, 44, 458 S.E.2d 448, 450 (1995).  Whether NationsBank's duty had arisen at that time is a "pure question of law" to be decided by the court.  Id. at 45, 458 S.E.2d at 451; The Chesapeake and Potomac Tel. Co. of Va. v. Bullock, 182 Va. 440, 445, 29 S.E.2d 228, 230 (1944).  Thus, the issue before this Court is whether Amos presented sufficient evidence to prove that, at the time of the accident, the storm had ended and a reasonable time thereafter had elapsed.

When a trial judge disapproves a verdict, that verdict is not entitled to the same weight as a verdict that has been approved.  Deskins v. T.H. Nichols Line Contractor, Inc., 234 Va. 185, 186, 361 S.E.2d 125, 125 (1987).  However, we must still consider the evidence in the light most favorable to Amos, who was the recipient of the verdict.  Id.  We must also accord Amos "the benefit of all substantial conflict in the evidence, as well as all reasonable inferences that could be drawn therefrom."

2

<u>Kendrick v. Vaz, Inc.</u>, 244 Va. 380, 384, 421 S.E.2d 447, 450 (1992).  We will review the evidence using these principles.

At trial, Amos testified that, on February 2, 1996, around 1:20 p.m., she left the building where she worked in downtown Norfolk and walked across the street to the NationsBank building for the purpose of opening an account.  Amos described the weather conditions at that time as being "cold" with a "light drizzle" falling and the temperature as having dropped significantly since the morning hours.

Upon reaching the NationsBank complex, Amos ascended  stairs that lead from the street level up to an outside pedestal or plaza area, walked approximately halfway across the plaza, and "slipped a little."  Amos stated that the plaza's surface "looked wet, just looked like it was raining" but that it did not "look like ice." She also testified that she saw no signs, ropes, cones, salt or chemicals alerting her to the presence of ice.  Amos testified that she then walked more cautiously, but that she slipped and fell after three or four more steps and landed on her back.  As a result of her fall, Amos fractured her right ankle.

Amos presented evidence from two bystanders, Ronald Dew and Tina Sutton, who worked in the NationsBank building and assisted Amos after she fell.  Both Dew and Sutton testified regarding the weather conditions when Amos fell as well as the weather conditions earlier that day.  Dew stated that, when he arrived at

3

the NationsBank building about 8:30 a.m., the weather conditions were "[v]ery icy" and "[v]ery windy and cold." Dew further testified that, at the time Amos fell, it was "[s]till windy and cold, icy" and that a "lot of ice . . . a lot of packed snow" was on the plaza. Sutton also testified that, when she arrived at work around 8:30 a.m., the temperature was "extremely cold" and that there had been "some ice or some kind of freezing condition the day before." Sutton described the weather conditions when Amos fell as "cold . . . very, very cold."

NationsBank presented two witnesses who corroborated Amos' evidence that the weather conditions at the NationsBank building on the day Amos fell were cold, windy, and icy. One of the witnesses also described the area where Amos fell as covered with "ice with little piles of slush here and there."

Finally, Jeffrey B. Lawson testified for NationsBank as an expert witness in the field of meteorology. Lawson confirmed that "a significant ice storm" began in the Norfolk area about 3:00 a.m. on February 2, 1996 and did not begin to abate until 2:41 p.m. that day. Lawson stated that "it continued to rain, continued to have a temperature below freezing all throughout the morning and all through the early parts of the afternoon." He further explained that the Norfolk area had freezing rain "through about 2:50 in the afternoon" and that the storm formed "a thick layer of ice throughout the day that didn't let up except for a

4

few hours in the late afternoon and then started up again in the evening."  Records reviewed by Lawson from the National Oceanic and Atmospheric Administration (NOAA) also indicate that there was "freezing rain" from 10:37 a.m. to 1:50 p.m. and "freezing drizzle" at 2:50 p.m. in the Norfolk area on February 2, 1996.

Following the jury's verdict in favor of Amos, NationsBank moved to set aside that verdict on the grounds that it did not have a duty to remove ice or snow from its premises until after the storm subsided and that all the evidence, including Amos' testimony, demonstrated that the storm was still ongoing when she fell.  After considering briefs filed by both parties, the trial court granted the motion and entered final judgment for NationsBank in an order dated July 1, 1997.  In a letter opinion, the trial court characterized the storm as "raging" at the time of Amos' fall and determined that "[t]he overwhelming evidence presented at trial [was] conclusive that at the time of [Amos'] injury, an ice storm was in progress, moisture was falling, and the moisture was freezing on the ground." Accordingly, the court held that NationsBank "had no duty at the time of [Amos'] injury to remove the ice on the pedestal to the building."

However, Amos maintains on appeal that she presented sufficient evidence to establish that NationsBank owed her the duty to clear its premises.  Specifically, Amos relies on the fact that the witnesses who testified about the weather conditions in

5

downtown Norfolk at the time of her fall failed to mention, observe, or describe an ongoing ice storm or freezing precipitation. Amos contends that the absence of such testimony proves that the storm had ended. We disagree.

The absence of any affirmative testimony with regard to an ongoing storm or freezing precipitation is an insufficient premise upon which to base a conclusion that the ice storm had ended. Just as no witness conclusively stated that the storm was ongoing, not a single witness affirmatively said that the storm was over. Rather, the evidence actually adduced at trial and the reasonable inferences which may be drawn therefrom indicate that the storm had not yet passed when Amos fell. Amos herself testified that, at the time of her accident, a "light drizzle" was falling. Furthermore, the meteorologist confirmed that, on the day in question, the Norfolk area had a "significant ice storm" with "freezing rain" lasting until approximately 2:50 p.m., more than an hour after Amos' accident. According to the meteorologist, the storm created a "thick layer of ice" and did not abate "except for a few hours in the late afternoon." The NOAA records also show that freezing rain and drizzle occurred in the Norfolk area until 2:50 p.m.

Nevertheless, Amos posits that the trial court erroneously characterized the storm as "raging" based on her testimony that a "light drizzle" was falling when she fell. However, a storm does

6

not have to be "raging" in order for a business inviter to wait until the end of the storm before removing ice and snow from its premises.  We have previously held that a storm was ongoing when there was a "fairly continuous condition of freezing rain or sleet" falling during a four and one-half hour time period, Walker, 187 Va. at 11, 45 S.E.2d at 901, and when "moisture was falling and freezing on the ground."  Feagley, 237 Va. at 415, 377 S.E.2d at 438.

Thus, we agree with the trial court that the evidence overwhelmingly shows that, at the time of Amos' fall, there was an ongoing ice storm with precipitation falling and freezing on the ground.  We, therefore, hold that the trial court properly set aside the jury's verdict because Amos failed to present sufficient evidence to establish that NationsBank had a duty to remove ice and snow from its premises at the time of her fall.

Moreover, the cessation of a storm alone does not give rise to an inviter's duty to clear its premises.  Rather, the storm must have ceased and a reasonable time period must have passed.  "[C]hanging conditions due to the pending storm render it inexpedient and impracticable to take earlier effective action, and . . . ordinary care does not require it."  Walker, 187 Va. at 13, 45 S.E.2d at 902.  Thus, the complete inquiry is whether the storm had ended, and if so, whether a reasonable time period had

7

passed.  Amos failed to present sufficient evidence to satisfy this standard.

Accordingly, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.