PRESENT: Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.

AVALON KIMBLE

                                          OPINION BY
v.    Record No. 090947        JUSTICE LEROY F. MILLETTE, JR.
                                         April 15, 2010
CHARLES ANTHONY CAREY

         FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                  Clarence N. Jenkins, Jr., Judge


     In this rescue doctrine case, we consider whether the

circuit court abused its discretion when it denied the rescuer's

motion to amend her complaint, excluded evidence of the victim's

intoxication, and granted the victim's motion to strike all the

evidence, holding that the rescuer's conduct in attempting a

rescue was "rash and/or reckless" as a matter of law.  The

circuit court did not abuse its discretion when it denied the

rescuer's motion to amend her complaint and when it excluded

evidence of the victim's intoxication.  However, the circuit

court erred by granting the victim's motion to strike, because

the issue whether the rescuer's conduct was rash and/or reckless

should have been submitted to the jury.

                          BACKGROUND

     The facts in this case are in dispute.  On review of a

trial court's judgment striking the plaintiff's evidence, we

---

     [1] Justice Keenan participated in the hearing and decision of
this case prior to her retirement from the Court on March 12,
2010.

consider the facts in the light most favorable to the plaintiff below, Avalon O. Kimble, and draw all fair inferences from those facts.[2] Rascher v. Friend, 279 Va. 370, 373, 689 S.E.2d 661, 663 (2010); Green v. Ingram, 269 Va. 281, 290, 608 S.E.2d 917, 922 (2005).

Evidence presented at trial established that on September 25, 2006, Charles A. Carey struck a construction truck in the rear while Carey was traveling westbound on Interstate 64 in Henrico County on a very dark night. As a result of the collision, Carey was trapped in his vehicle, "which had caught on fire."

On the night of the accident, Kimble was also driving on Interstate 64, but in an eastbound direction, and drove onto the shoulder of the highway when she saw Carey's car on fire. Kimble parked her car one hundred yards past the collision site and on the opposite side of the highway. Kimble observed Carey slumped over in his car when she crossed the highway to assist him. While Kimble was in the middle of the left eastbound lane, with her hands in the air, she was struck by a car driven by Michael J. Preusser.[3] Preusser was traveling on the highway at

---

[2] Plaintiff became married prior to trial. We will refer to her throughout this opinion using her name as of the time she was injured, which is the same name she used when filing her complaint.

[3] Kimble filed suit against Carey and Preusser, and later nonsuited her claims against Preusser.

65 miles per hour, and testified that he could not see Kimble until immediately before his car struck her. According to Master Trooper W. H. Napper of the Virginia State Police, who investigated Kimble's accident, it was so dark outside "you [could not] see your hand in front of your face."

Kimble filed a complaint against Carey, alleging that "Carey's negligence created a dangerous circumstance[] and but for . . . Carey's negligence [Kimble] would not have been caused to render emergency assistance," and that Carey's negligence was a direct and proximate cause of Kimble's injuries.

At the time of the accident, Carey's blood alcohol level was 0.15, which is above the legal limit in Virginia. Code § 18.2-266; Code § 46.2-341.27. Carey was charged with driving while under the influence of alcohol and pled guilty to that offense in the general district court. Upon learning of Carey's blood alcohol level at the time of his collision with the construction truck, Kimble filed a motion for leave to file an amended complaint. Kimble's proposed amended complaint included a count alleging willful or wanton conduct by Carey and sought punitive damages.[4]

---

[4] Kimble also filed a proposed second amended complaint, in which she reduced the compensatory and punitive damages sought.

Following a pretrial hearing,[5] the circuit court issued a letter opinion denying Kimble's motion for leave to file an amended complaint, holding that because the parties agreed that the rescue doctrine was implicated, all of the facts of Carey's conduct that brought him into peril before Kimble initiated a rescue were not material or relevant. The circuit court also held that, because the parties "seem[ed] to agree" that Carey was negligent, the focus of the analysis shifted to whether Kimble was contributorily negligent under the rescue doctrine.

Kimble filed a motion for reconsideration, which the circuit court denied in a letter opinion. The circuit court held that the degree of Carey's negligence that put him into peril was immaterial and irrelevant because Carey's negligent acts were not directed at Kimble and "the case is about injury [Kimble] is said to have received after the rescue attempt began."

At the outset of the jury trial, the circuit court reiterated its ruling that evidence relating to the circumstances that put Carey in a position of peril was immaterial, and that evidence of "Carey's conduct prior to and

---

[5] Judge Melvin R. Hughes, Jr. presided over the pretrial hearing and issued both the letter opinion denying Kimble's motion for leave to file an amended complaint and her motion for reconsideration.

about the collision" with the construction truck, including evidence of Carey's intoxication, would be excluded.

At the conclusion of Kimble's case, Carey moved to strike the evidence. Carey asserted three grounds in support of his motion to strike: (1) the evidence did not support the application of the rescue doctrine; (2) Kimble did not establish a prima facie case of negligence against Carey; and (3) Kimble was contributorily negligent as a matter of law because she recklessly endangered her own life by crossing the highway. The court took Carey's motion to strike under advisement.

Carey then presented his case in defense of Kimble's claims, and Kimble presented rebuttal evidence. After the conclusion of all the evidence, Carey renewed his motion to strike on the same grounds. The circuit court found sufficient evidence for Kimble to proceed against Carey under the rescue doctrine. The circuit court further determined that "there's no question as to whether [Kimble] was contributorily negligent," and that "[t]he only issue is does [Kimble's conduct] rise to recklessness or rash[ness] based upon this [rescue] doctrine."

The circuit court held that Kimble was negligent as a matter of law, because "the attempt that [Kimble] made was done so recklessly and/or rashly" that reasonable minds could not differ. Kimble noted her exception to the court's rejection of her argument that it was a jury question whether Kimble acted in

5

a rash or reckless manner.  Kimble's appeal to this Court followed.

DISCUSSION

On appeal, Kimble assigns error to the circuit court's rulings:  (1) denying her motion to amend her complaint to allege willful or wanton conduct by Carey; (2) excluding evidence of Carey's intoxication at trial; and (3) sustaining Carey's motion to strike Kimble's evidence.  We will address the first two assignments of error together, as they relate to the evidence of Carey's intoxication and Kimble's argument that the degree of Carey's intoxication and negligence was material and relevant.

1. Rescue Doctrine

In order to address the relevance of Carey's intoxication as it pertains to the level of care exhibited by Kimble in her attempt to assist Carey, we must first consider the elements of the rescue doctrine.  The rescue doctrine, sometimes referred to as the humanitarian doctrine, rests on the premise that

> [p]ersons are held justified in assuming greater risks in the protection of human life than would be sustained under other circumstances. Sentiments of humanity applaud the act, the law commends it, and, if not extremely rash and reckless, awards the rescuer redress for injuries received, without weighing with technical precision the rules of contributory negligence or assumption of risk.

Commonwealth v. Millsaps, 232 Va. 502, 504, 507, 352 S.E.2d 311, 311-12, 313-14 (1987) (quoting Southern Ry. Co. v. Baptist, 114 Va. 723, 727-28, 77 S.E. 477, 479 (1913)).

We have consistently held that while it is commendable to attempt to rescue a fellow human being, the rescuer cannot recover for injuries sustained during the rescue attempt if the rescuer has acted rashly or recklessly in disregard of his or her own safety.

> [A] rescuer is justified in exposing himself [or herself] to danger, in a manner that would deprive him [or her] of a recovery for his [or her] injuries under other circumstances, if the peril threatening the victim is imminent and real, not merely imaginary or speculative, and the rescuer has not rashly or recklessly disregarded all consideration for his [or her] own safety.

Lassiter, 235 Va. at 277, 368 S.E.2d at 260 (emphasis added).

Most of the cases in our jurisprudence are based upon the branch of the rescue doctrine concerning suits brought by the rescuer against a third-party whose negligence placed a victim in a situation of imminent peril and the rescuer is injured by the third-party during the rescue attempt. See, e.g., Millsaps, 232 Va. at 505-07, 352 S.E.2d at 312-13 (Commonwealth sued third-party speeder for damages to state police vehicle and other property damage when state trooper attempted to rescue potential victims on interstate highway who may have been placed in danger by speeder's flight from police); Roanoke Hospital

7

Ass'n v. Hayes, 204 Va. 703, 704, 133 S.E.2d 559, 560 (1963) (private nurse sued third-party hospital for injuries she sustained in rescuing her patient from imminent danger caused by hospital's alleged negligence); Andrews v. Appalachian Electric Power Co., 192 Va. 150, 152-54, 63 S.E.2d 750, 752-53 (1951) (suit by administrator against third-party power company on behalf of rescuer killed in effort to remove broken electric overhead wire from body of helpless victim injured through power company's alleged negligence); Southern Ry. Co. v. Baptist, 114 Va. 723, 724-27, 77 S.E. 477, 478-79 (1913) (bystander sued third-party railroad company for injuries he sustained in attempt to protect victim on an unmanageable horse from being injured by railroad's allegedly negligent operation of its train); Wright v. Atlantic Coast Line R.R. Co., 110 Va. 670, 671-73, 66 S.E. 848, 848-49 (1910) (daughter sued third-party railroad company for injuries she sustained during attempt to rescue her mother who was in peril due to railroad's allegedly negligent operation of its train).

In Lassiter v. Warinner, 235 Va. 274, 368 S.E.2d 258 (1988), we discussed the application of the rescue doctrine in a situation in which the victim may be liable to the rescuer when the victim's own negligence results in injury to the rescuer. Id. at 276-78, 368 S.E.2d at 259-60. We stated that the rescue doctrine is viewed as a limitation on the defense of

8

contributory negligence.  Id.  This limitation is based upon the idea that it is commendable to save another from injury or death, and the law will not preclude the rescuer from recovery for his or her own injury even though the rescuer voluntarily exposed himself or herself to danger.  Id.  While we stated with approval the principle that the victim may be liable to the rescuer, in Lassiter the victim was not negligent in creating the peril that invited the rescue and resulted in injury to the rescuer.  Rather, the victim's negligence occurred during the rescue attempt and injured the rescuer.  Id. at 280, 368 S.E.2d at 261-62.

However, in this case, Kimble alleged that Carey's negligence in creating his own peril was a proximate cause of Kimble's injuries inflicted by a third-party during her attempt to rescue Carey.  Based upon the facts of this case, we apply the branch of the rescue doctrine in which the victim may be liable to the rescuer based on the negligent acts of the victim which placed him or her in peril if those negligent acts also proximately caused the rescuer's injuries during the attempted rescue.[6]

---

[6] We have not previously considered a case brought under this branch of the rescue doctrine.  According to the trial court, the parties in this case "seem to agree" that Carey was negligent.  While Carey argues that Kimble's crossing the highway was an intervening cause of her injuries, Carey has raised no issue on appeal regarding whether his negligence was a

9

2. Allegations and evidence of Carey's intoxication

Kimble argues that the circuit court abused its discretion by denying her motion to amend her complaint to include a count alleging willful or wanton conduct by Carey and seeking punitive damages, as the court must liberally grant leave to amend in furtherance of the ends of justice. Kole v. City of Chesapeake, 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994); Rule 1:8. Kimble asserts that she filed the motion for leave to amend after learning about Carey's intoxication at the time of his collision with the construction truck, that she had not previously amended her complaint, and that Carey did not file any written opposition to her motion.

Kimble further argues that the circuit court abused its discretion by excluding evidence of Carey's intoxication at trial, because evidence of how Carey created the peril inviting the rescue was material and relevant. Kimble asserts that in rescue doctrine analysis, the victim's own negligence may be a limitation on any contributory negligence defense, and therefore, the more egregious the victim's conduct in creating the peril, the greater the legal protection that is afforded the rescuer.

proximate cause of Kimble's injuries. Accordingly, Carey's negligence as a proximate cause of Kimble's injuries has become the law of the case.

Kimble maintains that willful or wanton conduct by the victim is a complete bar to the contributory negligence defense, and a per se finding of willful or wanton conduct is mandated by Carey's violation of Code § 8.01-44.5.[7]  Therefore, Kimble argues that Carey's actions in driving while under the influence of alcohol bear directly on the issue whether he would be entitled to a contributory negligence instruction at trial.

Kimble has not provided any authority for her argument that the rescuer's conduct is measured against the level of negligence attributed to the victim.  We are aware of no authority supporting the proposition that the court should determine the victim's degree of negligence in order to formulate its jury instructions on the issue of contributory negligence in a rescue doctrine case.  Kimble points us to no authority to support her position that a standard other than rash or reckless disregard for personal safety may be applied to the rescuer's conduct if the victim's conduct was willful or wanton, nor have we found any such authority. Within the realm of negligence cases, application of the rash or reckless disregard standard to the conduct of the plaintiff appears to be unique to rescue doctrine cases.  Application of this standard serves the meaningful purpose of rewarding a humanitarian effort

_____

[7] Pursuant to Code § 8.01-44.5, Carey's conduct would be considered willful or wanton due to the fact that his blood

11

to preserve the life of another if carried out in a manner that is not rash or reckless, and therefore not inconsistent with the protection of one's own safety.

It is precisely because the rash or reckless disregard standard is used in rescue doctrine cases that courts need not weigh with technical precision the rules of contributory negligence or assumption of risk.  <u>Millsaps</u>, 232 Va. at 507, 352 S.E.2d at 313-14.  Pursuant to the rescue doctrine, the laudable purpose of the rescuer's humanitarian effort precludes the application of any lack of due care by the rescuer to bar his or her recovery unless the rescuer acted in a manner that was rash or reckless.

Courts are also not required to consider the degree of negligence on the part of the victim in circumstances such as those presented in this case.  It makes no difference to rescue doctrine analysis whether the victim was guilty of simple negligence, gross negligence, or willful or wanton conduct in creating his or her peril, because the rescuer's right to recover for injuries sustained during the rescue attempt rises or falls with the determination whether the rescuer acted rashly or recklessly.  If the rescuer acted rashly or recklessly, he or she is barred from recovery.  However, if the rescuer did not act rashly or recklessly, and the victim was negligent in

alcohol concentration was 0.15 percent by weight by volume.

12

placing himself or herself in "apparent immediate peril of death or serious bodily harm," the rescuer may recover. Id. at 507, 352 S.E.2d at 313.

With these principles in mind, we review the circuit court's denial of Kimble's motion to amend her complaint to allege willful or wanton conduct and seek punitive damages for an abuse of discretion. The decision whether to grant leave to amend a complaint rests within the sound discretion of the trial court. Ogunde v. Prison Health Servs., Inc., 274 Va. 55, 67, 645 S.E.2d 520, 527 (2007). We hold that the circuit court did not abuse its discretion by denying Kimble's motion to amend her complaint, because, as the court concluded, the allegation of willful or wanton conduct by Carey was irrelevant and immaterial under the rescue doctrine. The degree of negligence attributable to Carey had no legal effect on the rash or reckless disregard standard of care applicable to Kimble in determining whether she was sufficiently at fault in her rescue attempt to bar her recovery through contributory negligence.

We also review a trial court's decision to exclude evidence for an abuse of discretion, and we will not disturb a trial court's evidentiary ruling absent an abuse of discretion. Norfolk and Portsmouth Belt Line R.R. Co. v. Wilson, 276 Va. 739, 743, 667 S.E.2d 735, 737 (2008); Riverside Hospital v. Johnson, 272 Va. 518, 529, 636 S.E.2d 416, 421 (2006). We hold

13

that the circuit court did not abuse its discretion in excluding evidence of Carey's intoxication, because it was immaterial and irrelevant under the rescue doctrine whether Carey's conduct that put him in peril was willful or wanton.  Therefore, the only purpose in permitting Kimble to introduce evidence of Carey's intoxication would be to inflame the jury, and it was not an abuse of discretion for the circuit court to prohibit the introduction of that evidence.

### 3. Motion to strike

Kimble also assigns error to the circuit court's grant of Carey's motion to strike.  Kimble argues that the question of whether her actions reached the level of rash and reckless disregard for personal safety was for the jury to decide, and that the circuit court, by granting Carey's motion to strike, improperly concluded that Kimble was contributorily negligent as a matter of law.

Carey argues that the circuit court did not err by granting his motion to strike as reasonable minds could not differ that Kimble was contributorily negligent under the rescue doctrine. Carey asserts that Kimble acted rashly and recklessly when she positioned herself in the middle of a dark, high-speed highway without being sure whether anyone actually needed help, and that reasonable minds could not differ in reaching that conclusion.

We agree with Kimble that the question whether she was contributorily negligent and, if so, whether her negligence rose to the level of rash or reckless disregard for her own safety was for the jury to decide. Generally, the issue of contributory negligence is for a jury's resolution and only becomes a question of law for the court's determination when reasonable minds could not differ. Rascher, 279 Va. at 375, 689 S.E.2d at 664; Griffin v. Shively, 227 Va. 317, 320, 315 S.E.2d 210, 212 (1984).

We expressed this rule's applicability to the rescue doctrine context in Andrews, stating that "[a]s a general rule whether a person is guilty of contributory negligence in rushing into a place of danger to save another from imminent death or injury is a question for the jury." 192 Va. at 161, 63 S.E.2d at 757. In Andrews, the sole assignment of error on appeal to this Court was "that the issues of the negligence of the defendant and the contributory negligence of the [rescuer] should have been submitted to the jury." Id. at 153, 63 S.E.2d at 752. Since the trial court had not considered whether the rescuer was guilty of contributory negligence as a matter of law, this Court remanded that issue and set forth the applicable rescue doctrine principles as guidance to the trial court. We stated, in part, that

> [t]he rule is well settled that one who sees a
> person in imminent and serious peril caused by
> the negligence of another <u>cannot be charged with</u>
> <u>contributory negligence, as a matter of law, in</u>
> <u>risking his own life or serious injury in</u>
> <u>attempting to effect a rescue, provided the</u>
> <u>attempt is not recklessly or rashly made</u>. . . .
> Generally[,] even to save human life, one cannot
> rashly or recklessly disregard all consideration
> for his [or her] own personal safety without
> being charged with contributory negligence.

<u>Id.</u> at 160-61, 63 S.E.2d at 757 (quoting 38 Am. Jur., Negligence § 228, at 912-13) (emphasis added).

Applying these principles and considering the record, we conclude that the issue whether Kimble's conduct in attempting to rescue Carey rose to the level of being rash or reckless, thereby barring recovery under the rescue doctrine, should have been submitted to the jury. We hold that under the facts of this case, reasonable minds could differ on the issue of weighing Kimble's conduct.

## CONCLUSION

The circuit court did not abuse its discretion by denying Kimble's motion to amend her complaint and by excluding evidence of Carey's intoxication, because the issue whether Carey's conduct was willful or wanton was immaterial and irrelevant to the rescue doctrine analysis. However, the circuit court erred by determining that Kimble was contributorily negligent as a matter of law, as the issue whether her conduct was in rash or reckless disregard for her own safety should have been submitted

16

to the jury for determination.  We will remand this case to the circuit court for further proceedings consistent with this opinion.

Affirmed in part,
reversed in part,
 and remanded.
