COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:    Chief Judge Decker, Judges Malveaux and Callins
Argued by videoconference


KELLY L. WOODS
                                                            OPINION BY
v.        Record No. 0916-24-2              CHIEF JUDGE MARLA GRAFF DECKER
                                                            APRIL 1, 2025
SING SZECHUAN RESTAURANT, LLC


                FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                                  Claude V. Worrell, II, Judge

                Harry S. Max (LM Law, PLLC, on briefs), for appellant.

                Laura M. Berry (Elizabeth S. Skilling; Harman, Claytor,
                Corrigan & Wellman, on brief), for appellee.


        Kelly L. Woods appeals the circuit court's final order sustaining the demurrer of Sing

Szechuan Restaurant, LLC, to the lawsuit Woods filed after falling on a sidewalk outside the

restaurant.  The court held that the amended complaint failed to establish the restaurant had a

duty to maintain the city sidewalk, where the alleged icy conditions were located.  It also denied

her request for leave to amend the complaint a second time.  Woods challenges these rulings.

We hold that the circuit court did not err and affirm its judgment dismissing the lawsuit with

prejudice.

BACKGROUND[1]

This case arises from a slip-and-fall, which allegedly occurred while Woods, a food delivery driver, picked up an order from Sing Szechuan Restaurant, located in Charlottesville. According to Woods's first amended complaint, in January 2022, she "entered the [p]remises to fulfill a food order" to deliver to a customer of the restaurant. It "had been more than 24 hours since the most recent precipitation or snowfall," which the complaint alleged was a "reasonable amount of time" for the restaurant "to inspect and treat walkways and abutting sidewalks [for] snow or ice." After collecting the delivery order and "while leaving the [p]remises," Woods slipped and fell on ice. The complaint alleged in one paragraph that the ice was "*on* the [p]remises" and in another paragraph that it was "*at the junction* where the walkway on the [p]remises me[t] the sidewalk that abut[ted] the [p]remises." (Emphases added). The precise location of the ice was depicted in a photograph that Woods attached as an exhibit to the amended complaint.[2] She contended that the restaurant "caused or created the [u]nsafe condition" and failed to remedy it, thereby breaching its duty of care to her and proximately causing her injuries.

The restaurant filed a demurrer. It argued that Woods alleged the hazard was on the city sidewalk and that the amended complaint failed to establish that the restaurant had a duty to maintain that sidewalk. It contended that the photograph confirmed the "patch of ice" was "squarely [on] the city sidewalk," as opposed to on the restaurant's premises. The restaurant

---

[1] In reviewing a circuit court's judgment sustaining a demurrer, the appellate court "accept[s] as true all factual allegations expressly pleaded in the complaint and interpret[s] those allegations in the light most favorable to the plaintiff." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). "Furthermore, [the Court] draw[s] any reasonable inferences arising from the express factual allegations of the complaint in the plaintiff's favor." *Id.*

[2] As an exhibit to a different filing, Woods submitted various city property records for the restaurant's premises, which provided a rough representation of its boundaries.

reasoned the accident did not occur because of any hazardous condition on its own premises.  And it further asserted that it had no duty to maintain the city sidewalk for Woods's benefit.

Woods filed a written reply to the demurrer.  In the reply, she acknowledged the first amended complaint inaccurately alleged that the ice on which she fell was on the restaurant's property.  In contrast, however, she further suggested that the restaurant piled snow on its property that melted and turned to ice in a location "not on its property."  She asserted that when the restaurant cleared the snow from its property, it had "a duty to exercise reasonable care" so that it did not create a new hazard outside its property.  Finally, she asked the court for leave to file a second amended complaint if the court concluded the first amended complaint was insufficient.[3]

Argument on the demurrer focused on the location of the ice and the restaurant's duty of care to Woods.  Counsel for the restaurant suggested that Woods conceded the unsafe condition "was not on the [restaurant]'s property."  Counsel argued the restaurant, therefore, was not liable and noted that Woods could have sued the city if she had followed certain notice requirements in a timely fashion.  Counsel for Woods responded that because "this accident did happen on the city sidewalk," "[t]he real issue . . . [wa]s whether [the restaurant] could be liable for the . . . artificial conditions on its property . . . [that caused] an injury . . . outside its property."  Counsel alleged that the snow was "cleared incorrectly" from both the restaurant's and the city's property, allowing the formation of the ice on which Woods fell.

The circuit court sustained the restaurant's demurrer to the amended complaint.  It concluded that the photograph showed the "patch of moisture" was "squarely on the public right-of-way that [wa]s the City of Charlottesville's sidewalk."  The court held that "once the snow or ice [wa]s removed [by the restaurant] pursuant to . . . the city ordinance, there [wa]s no

---

[3] Other than the arguments Woods made in reply to the demurrer, she did not specifically proffer the contents of a second amended complaint.

continuing duty on the land holder or the occupier . . . to continue to monitor the conditions on the city's areas."[4]  Rather, according to the circuit court, that duty belonged to the city.  The court also denied Woods's motion to file a second amended complaint, explaining that the restaurant's "property seem[ed] pretty clear" and nothing Woods could "say [would] move[] th[e] p[atch] of water or ice [in the photograph] . . . closer to the [restaurant's] premises."

ANALYSIS

On appeal, Woods raises sixteen assignments of error, most of which hinge on whether the restaurant owed Woods a duty either to ameliorate icy conditions on city property at the point of ingress and egress to its premises or at least to warn her about them.  She contends that the manner in which the restaurant cleared its walkway and the city sidewalk was unreasonable and created the ice on which she slipped and fell, making it an "artificial condition[]" rather than a "natural" one.  Woods argues that because the restaurant acted affirmatively to clear the city sidewalk, it had a continuing duty to keep it clear for the benefit of its invitees, notwithstanding the city's ownership and related legal responsibilities.  Finally, she suggests that the circuit court erred by denying her request for leave to file a second amended complaint to adequately address her claim that the restaurant "[c]lear[ed] and pil[ed the] snow in [a] negligent manner[,] allowing it to escape . . . and refreeze."

I.  Ruling on the Demurrer

Fundamental legal principles guide our analysis.  The appellate court "review[s] a circuit court's judgment sustaining a demurrer de novo."  *Seymour v. Roanoke Cnty. Bd. of Supervisors*,

---

[4] The ordinance provides in pertinent part that "[i]t shall be the duty of every owner and/or occupant of every . . . lot which abuts . . . a paved sidewalk or walkway to have all snow or ice removed from such sidewalk or walkway within twenty-four (24) hours after the same has ceased falling."  Charlottesville, Va., Code of Ordinances § 28-25(a).  The duty exists even if "an unpaved strip of publicly-owned property runs between the paved sidewalk and the private property line."  *Id.*

- 4 -

301 Va. 156, 164 (2022). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). This Court "interpret[s] those allegations in the light most favorable to the plaintiff," in this case Woods. *See Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). But the Court gives "no weight" to unstated inferences "to the extent that they are unreasonable." *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (emphasis omitted) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)). Further, "[a] court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are part of the pleadings." *Schaecher v. Bouffault*, 290 Va. 83, 107 (2015). And the appellate court "do[es] not accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Patterson*, 301 Va. at 197 (quoting *Doe*, 299 Va. at 641). Finally, "[w]hether a legal duty in tort exists is a pure question of law to be reviewed de novo" on appeal. *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 79 (2019) (quoting *Brown v. Jacobs*, 289 Va. 209, 215 (2015)). Whether any such duty has been breached "is ordinarily a question of fact," but "it becomes an issue of law when 'reasonable minds could not differ' on the issue." *Smith v. McLaughlin*, 289 Va. 241, 255 (2015) (quoting *Poliquin v. Daniels*, 254 Va. 51, 57 (1997)).

### A. Location of the Alleged Ice

We look first to the relevant factual basis for Woods's claims. The allegations in the amended complaint and related exhibits, taken as a whole, permitted the circuit court to determine that the alleged icy condition was on property owned by the city—not on the restaurant's premises. The photograph Woods appended to the amended complaint shows that the "patch" of "water or ice" at issue was on the city sidewalk, and the circuit court so concluded. *See Schaecher*, 290 Va. at

- 5 -

107.  Though the text of Woods's amended complaint alleges both that the ice was located "on" the restaurant's "[p]remises" and "at the junction" where the city sidewalk met the restaurant's walkway, Woods conceded in argument on the demurrer, as well as on appeal, that the city owned the sidewalk on which the hazard was located.  *See Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 293 (2022) (noting that courts can accept factual concessions).  The issue, therefore, is what duty of care, if any, the restaurant had to Woods with respect to ice on the neighboring city sidewalk.

### B.  Duty of Care Owed by the Restaurant to Woods

We now turn to the question of the duty of care in the context of Woods's assignments of error.  First, we consider whether the restaurant had an affirmative duty to ensure that the city sidewalk adjacent to its premises was safe for pedestrians.  Second, we evaluate the extent to which the restaurant had a duty to avoid behavior on its property that created hazards for pedestrians outside its property.

### 1.  Affirmative Duty as to Business Premises and Adjacent City Sidewalks

Under the common law, every landowner has a duty of ordinary care to invitees on his premises, requiring him to maintain the premises in a reasonably safe condition and to warn the invitee of any hidden dangers.  *AlBritton v. Commonwealth*, 299 Va. 392, 405 (2021); *see also Wynne v. Spainhour*, 215 Va. 16, 17 (1974) (per curiam) (holding that where a property owner treated ice remaining in his parking lot after plowing, he was not liable when the invitee-plaintiff fell because the owner was "not an insurer of the plaintiff's safety" and "the remaining icy spots were open and obvious").  It is equally clear that every city in the Commonwealth has a nondelegable duty to maintain public sidewalks.  *See Votsis v. Ward's Coffee Shop, Inc.*, 217 Va. 652, 654 (1977).  Conversely, abutting landowners are generally not charged with keeping city sidewalks safe.  *See id.* at 654-55 (affirming the dismissal of a negligence action against abutting

landowners because they owed no duty of care to pedestrians for a defect on the city sidewalk where their driveway crossed it).  At common law, a property owner has "no duty to pedestrians to keep . . . adjacent sidewalks free from snow and ice coming thereon from natural causes."  *Johnson v. J.S. Bell, Jr. & Co.*, 202 Va. 274, 275 (1960) (quoting 24 A.L.R. 387, 388).

Woods maintains that the restaurant nonetheless owed her a duty of care with regard to the public sidewalk because she was a "[b]usiness-[i]nvitee."  She argues that a business has a duty to invitees not only to keep its own property clear of ice and snow but also to keep areas *adjacent* to the means of ingress and egress to the business's property clear of such hazards.  Virginia's common law, however, simply does not extend the business-invitee relationship from the restaurant's premises to the public sidewalk.  *See Kendrick v. Vaz, Inc.*, 244 Va. 380, 385 (1992). With regard to hazards on the public sidewalk, therefore, the person remains a mere pedestrian, not a business-invitee.[5]

So in the context of a pedestrian, we turn next to the role that the Charlottesville ordinance plays in the analysis of a duty of care.  An ordinance that requires landowners to "keep [a city's] sidewalks free from snow and ice . . . does not relieve the municipality of [its] primary duty with respect to the safety of its public streets[] and *does not impose . . . civil liability* on [a] lot owner in favor of a third person injured by reason of its violation."  *Johnson*, 202 Va. at 276 (emphasis added) (quoting 24 A.L.R. at 388) (holding that an abutting property owner was not liable to a pedestrian for injuries where the landowner failed to comply with Norfolk's snow-removal ordinance), *cited with approval in* 2 Sandra M. Stevenson & Wendy Van Wie, *Antieau on Local Government Law* § 29A.09[4] & n.56 (Matthew Bender & Co. 2d ed. 2024) (noting the majority

---

[5] Similarly, the Colorado Court of Appeals rejected a claim that city property becomes the property of an adjacent landowner for purposes of premises liability simply because the landowner clears an adjacent city sidewalk of snow and ice.  *See Burbach v. Canwest Invs., LLC*, 224 P.3d 437, 440-42 (Colo. App. 2009) (noting that the landowner cleared the sidewalk in compliance with an ordinance requiring it to do so).

view that "citizens injured on snow and ice cannot ordinarily [use local] enactments" requiring property owners to clear adjacent sidewalks to "create private causes of action").  As a result, the mere existence of the snow-removal ordinance does not establish that the restaurant had a duty of care to keep the city sidewalk free of snow and ice *for Woods's benefit*.[6]

2.  Duty to Avoid Using Private Property in a Way that Creates an Artificial Hazard for the Public

Woods attempts to avoid these legal principles by analogizing her claim to artificial-hazard cases to establish the restaurant nevertheless had a duty to her on the facts of this case.  *See, e.g.*, *Shoemaker v. Funkhouser*, 299 Va. 471, 482-83 (2021) (holding that landowners owed a duty to their neighbors not to grant permission for target-shooting toward a neighboring house when they knew or should have known that bullets were likely to strike that house).  Woods's claim of an artificial hazard, however, is not supported by factual allegations in the amended complaint.  The photograph appended to the amended complaint depicts what is typically a natural hazard—ice.  In opposing the demurrer, in seeking to amend her complaint a second time, and on appeal, Woods adds that the ice formed "as temperatures fluctuated[ and] the snow melted, refroze, and created black ice."  She acknowledges that she does not allege the restaurant was negligent because of the melting and refreezing of a "natural accumulation of snow" on its own property.[7]  Instead, she argues that the ice in the photograph is an "artificial" accumulation.  This is so, she suggests, because the restaurant cleared the snow from both its own walkway and the abutting city sidewalk "incorrectly," creating piles of snow, which then melted and refroze on the city sidewalk.  Based on these allegations, if proved, she contends the restaurant could be held liable.

---

[6] The amended complaint and Woods's more recent claims allege that the restaurant was negligent, but Woods does not suggest the restaurant violated the City of Charlottesville ordinance.

[7] Also, the complaint contains no allegation that the restaurant shoveled its snow directly onto the sidewalk.

- 8 -

The restaurant's duty, at most, was to "use reasonable care for the safety of those outside the land to prevent direct harm resulting from [its] affirmative activities on the land" or adjacent to it. *See Shoemaker*, 299 Va. at 478 (quoting 2 Dan B. Dobbs, *The Law of Torts* § 272 (2d ed. 2011)); *Cline v. Dunlora S., LLC*, 284 Va. 102, 109 (2012) (holding that the duty of an adjoining property owner is to refrain from any act that would make a highway more dangerous than in its natural state or "the state in which the [public entity that maintains it] has left it" (quoting *Price v. Travis*, 149 Va. 536, 542 (1927))). And we conclude on both the facts in the amended complaint and those Woods seeks to add to a second amended complaint, as amplified by the photograph, that the circuit court correctly determined the restaurant had no continuing duty to track conditions like the melting of snow and its refreezing as ice on the public sidewalk.[8] *See RGR, LLC v. Settle*, 288 Va. 260, 277 (2014) (acknowledging the distinction between artificial and natural conditions on land and holding that an owner of "land adjacent to a highway has no common[-]law duty to persons traveling on the highway with regard to natural conditions on the land"). Without more, as a matter of law, these allegations do not establish the restaurant's violation of a duty to a pedestrian on the adjacent city sidewalk. *See Riccitelli v. Sternfeld*, 109 N.E.2d 921, 922-23 (Ill. App. Ct. 1952) (rejecting a claim of liability where shoveled snow from a business's property and the public sidewalk formed ice and slush on that sidewalk), *aff'd*, 115 N.E.2d 288, 290 (Ill. 1953).[9]

---

[8] The Court recognizes the duty of appellate courts to decide cases on the best and narrowest grounds and not to offer advisory opinions. *See Ritchie v. Commonwealth*, 74 Va. App. 328, 334 (2022). We do not run afoul of those principles here because Woods also challenges the circuit court's denial of her motion to amend the complaint a second time to add the allegations recited. Additionally, because we hold that even the second set of allegations fails to provide a basis for recovery as a matter of law, we need not consider the two sets of allegations separately.

[9] Courts in other jurisdictions have reached this same result. *See, e.g.*, *LaFond v. United States*, 781 F.2d 153, 154-55 (8th Cir. 1986) (applying Minnesota law); *New Highland Recreation, Inc. v. Fries*, 229 A.2d 89, 92 (Md. 1967).

- 9 -

The adjacent property owner is not liable to pedestrians under these circumstances because the mere melting and refreezing of shoveled snow results from "natural causes" rather than an artificial condition.[10]  *See id.* at 922 (applying this rationale and noting that "the industry displayed by citizens removing snow . . . is desirable, if not necessary").[11]  And a property owner simply has "no duty to pedestrians to keep the adjacent sidewalks free from snow and ice coming thereon from natural causes."  *Johnson*, 202 Va. at 275 (quoting 24 A.L.R. at 388).  *Compare RGR*, 288 Va. at 277 (recognizing the absence of a common-law duty to passersby regarding natural conditions), *with Quisenberry v. Huntington Ingalls Inc.*, 296 Va. 233, 244-45 (2018) (recognizing the duty of a landowner to protect others from an artificial hazard that has escaped from the landowner's property).  The instant case is distinguishable from *Artrip v. E.E. Berry Equipment Co.*, 240 Va. 354 (1990).  In *Artrip*, the Supreme Court of Virginia recognized that liability may result when something other than the natural melting and refreezing of shoveled snow occurs.  *See id.* at 356-57 (holding that a pedestrian, who slipped while traversing a pile of snow three feet high that fully surrounded a parking lot, might recover from a professional snow remover who admitted that his plow, "if properly operated, would not cause snow to accumulate" in that way).  Such is not the situation here, on either the facts pleaded or those sought to be pleaded.

---

[10] Virginia cases involving surface water intrusions indirectly support this outcome.  In *McCauley v. Phillips*, 216 Va. 450, 455 (1975), for example, an upper landowner installed a new drainpipe.  The Court held that because the new drainpipe caused no greater interference with the lower landowner's property "than would naturally result from the reasonable development of [the] upper landowner's property," no liability would be imposed.  *Id.*  It contrasted a decision in which an upper landowner caused "[a]ctionable damage" to lower property by "collect[ing]" and "discharg[ing]" water at a significantly higher volume and flow rate, "with silt and debris."  *Id.*

[11] Treating the melting and refreezing of shoveled snow as natural is in keeping with case law in other states.  *Compare Buffa v. Dyck*, 358 N.W.2d 918, 919 (Mich. Ct. App. 1984) (characterizing melting and refreezing as "natural forces" for which "liability will not attach"), *and Bittle v. Brunetti*, 750 P.2d 49, 51 n.2, 53 n.5 (Colo. 1988) (en banc) (noting an unpublished decision holding that this phenomenon is natural), *with Johnson v. Elmborg*, 205 N.W. 628, 628-29 (Minn. 1925) (holding that where water from a property owner's defective drainpipe collected and froze on an adjacent city sidewalk, liability could result).

The amended complaint (including the photograph), the reasonable inferences from it, and the claims Woods seeks to add to a second amended complaint fail—as a matter of law—to allege that the restaurant engaged in any specific affirmative acts that could establish a breach of a duty to Woods. Under these facts and the reasonable inferences from them, the circuit court did not err by sustaining the demurrer. *See generally Amos v. NationsBank, N.A.*, 256 Va. 344, 346 (1998) (holding that whether a premises owner's duty to remove ice and snow has arisen at the time of an injured party's fall is a question of law); *Smith*, 289 Va. at 255 (observing that whether any such duty has been breached is "an issue of law when 'reasonable minds could not differ'" (quoting *Poliquin*, 254 Va. at 57)).

## II. Motion to Amend the First Amended Complaint

Woods suggests that the circuit court erred by denying her motion to amend her complaint a second time.

"The decision whether to grant leave to amend a complaint rests within the sound discretion of the [circuit] court." *Kimble v. Carey*, 279 Va. 652, 662 (2010). A reviewing court can conclude that an abuse of discretion occurred "only when reasonable jurists could not differ [about] the correct result," which is different from the result reached by the circuit court. *See Graydon Manor, LLC v. Bd. of Supervisors*, 79 Va. App. 156, 168 (2023). In evaluating that court's exercise of its discretion, the appellate court considers various factors including "how long the case has been pending" and "whether the [circuit] court previously granted leave to amend." *Doe*, 299 Va. at 656. A court may also consider whether the proposed amendment is "[]relevant and []material" to the cause of action. *See Kimble*, 279 Va. at 662. In other words, a circuit court does not abuse its discretion by denying a motion to amend a complaint when the amendment sought will "ha[ve] no legal effect." *See id.*

Here, the initial complaint regarding the alleged January 2022 injuries was filed in August 2023. Woods was granted leave to file an amended complaint after the restaurant's initial demurrer, and she filed her first amended complaint in February 2024. Then in May 2024, after the restaurant filed a demurrer challenging her first amended complaint, she sought leave to file a second amended complaint.

At that point, the circuit court did not abuse its discretion by denying her request for a second opportunity to amend. In addition to the fact that Woods's fall had occurred more than two years earlier and the lawsuit had been pending for about nine months, the circuit court correctly viewed her second request to amend as futile. No amendment could place the patch of water or ice, which the photo showed (and the concession confirmed) was clearly located on the city sidewalk, on the restaurant's premises instead. *See Doe*, 299 Va. at 656-57 (affirming the circuit court's denial of leave to file an amended complaint where leave had previously been granted and none of the new facts proffered "would . . . have affected the circuit court's analysis"). And to the extent Woods suggests the restaurant could be held liable because it was negligent in the way it shoveled the snow—allowing it to melt and refreeze on the city sidewalk—that position is also without legal foundation. Where an adjacent property owner clears a sidewalk as required by an ordinance and places the snow in low piles as shown in the photograph, after which the snow melts and refreezes on the city sidewalk, the property owner is not liable because no artificial act of the property owner created the melting and refreezing. *See RGR*, 288 Va. at 277; *Johnson*, 202 Va. at 275-77; *see also, e.g.*, *Riccitelli*, 109 N.E.2d at 922-23 (holding that the melting and refreezing of snow shoveled from private and public property, absent more, is a natural rather than artificial condition). Therefore, absent legally viable allegations that the restaurant breached some duty it owed to Woods, a second amended complaint would also fail to allege a legal basis for relief from the

restaurant.  As a result, the circuit court did not abuse its discretion by denying the motion to amend the complaint a second time.

CONCLUSION

The circuit court did not err by granting the demurrer to Woods's first amended complaint and denying her motion to amend a second time.  Consequently, the court's judgment dismissing the amended complaint with prejudice is affirmed.

*Affirmed.*