COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Ortiz, Chaney and Senior Judge Haley
Argued by videoconference


SAGE VENTURES, LC, ET AL.

                                                    MEMORANDUM OPINION* BY
v.         Record No. 1167-22-2                    JUDGE VERNIDA R. CHANEY
                                                        FEBRUARY 13, 2024

CHATHAM RIDGE CONDOMINIUM UNIT
 OWNER'S ASSOCIATION, ET AL.


            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                          Cheryl V. Higgins, Judge

            Steven S. Biss (Law Office of Steven S. Biss, on brief), for
            appellants.

            Dannel C. Duddy (Chad A. Mooney; David W. Thomas; David D.
            Oberg; Harman, Claytor, Corrigan & Wellman; Petty Livingston
            Dawson & Richards, P.C.; MichieHamlett; Jones, Oberg & Green,
            LLP, on brief), for appellees.


      Sage Ventures, LC (Sage) and Dale Mancuso, the sole owner of Sage, appeal the trial

court's orders (i) sustaining a plea in bar to Sage's breach of contract claim based on the statute of

limitations; (ii) excluding a search warrant affidavit from the evidence at trial; and (iii) striking

Mancuso's malicious prosecution claim.  Sage argues that it was entitled to have a jury determine

facts related to the timeliness of its breach of contract claim.  Mancuso contends that the search

warrant affidavit was admissible as a judicial record under Code § 8.01-389.  Mancuso further

contends that his trial testimony, combined with the Albemarle Police Department's execution of a

search warrant on his home in 2012, constituted sufficient evidence to support his malicious

prosecution claim.  For the following reasons, this Court affirms the trial court's judgment.

_____
      * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND

On April 6, 2016, Sage Ventures, LC and Dale Mancuso, Sage's sole owner, filed suit against Chatham Ridge Condominium Unit Owner's Association (Chatham Ridge), Bonnie Pendleton, and Katha Bollfrass. The original complaint included claims for breach of contract, conspiracy, defamation, and insulting words, and the later amended complaint added a malicious prosecution claim against Pendleton and Chatham Ridge. Sage alleged that Chatham Ridge breached a contract to pay for construction and restoration services.

Sage's amended complaint alleged, in relevant part, the following:

- On April 10, 2007, a fire occurred at Chatham Ridge causing substantial damage.[1]

- In June 2007, Chatham Ridge executed a reconstruction agreement with Sage.[2]

- Beginning in or about January 2008, with the agreement of Chatham Ridge, Sage and Charlottesville Construction and Services, Inc. (CCS) "performed the remaining repair work."[3]

- In or about March 2010, CCS "decided to close the business of CCS."[4]

- CCS assigned all of its rights to receive compensation for work done at Chatham Ridge to Sage.[5]

- By letter to Chatham Ridge dated April 10, 2011, CCS demanded payment for the "remaining balance owed by Chatham Ridge ($80,239.55)."[6]

---

[1] *See* Amended Complaint at ¶7.

[2] *See id*. at ¶8.

[3] *See id*. at ¶12.

[4] *See id*. at ¶13.

[5] *See id*. at ¶14.

[6] *See id*. at ¶16.

On April 13, 2017, all the defendants filed demurrers and pleas in bar. Chatham Ridge's plea in bar to Sage's breach of contract claim cited the three-year statute of limitations for breach of an oral contract and the five-year statute of limitations for breach of a written contract, but did not specify which one applied. Chatham Ridge asserted that the contract breach was reflected in CCS's written demand for payment on April 10, 2011, but Sage's complaint was not filed until April 6, 2016. Chatham Ridge contended that if the trial court granted its motion craving oyer, the invoices attached to the demand letter would demonstrate that the breach of contract claim was time-barred. The record does not contain a ruling on the motion craving oyer.

On August 18, 2017, Sage filed a memorandum in opposition to the defendants' demurrers and pleas. Sage did not expressly address the statute of limitations in its memorandum.[7] Its sole argument regarding the breach of contract claim was:

> In Count I of its Amended Complaint, Sage Ventures expressly alleges (1) a legally enforceable obligation owed by Chatham Ridge to Sage (under the Reconstruction Agreement and as assignee of CCS) [*Amended Complaint*, ¶¶ 8, 12, 13, 14], (2) performance by Sage and CCS and Chatham Ridge's violation or breach of that obligation [*Id.*, ¶¶ [12, 16, 17, 24], and (3) loss or damage to Sage in the amount of $80,239.55 caused by the breach of obligation. [*Id.*, ¶¶ 16, 25].
>
> Sage has alleged each and every element of a claim of breach of contract.

Plaintiff's Memorandum in Opposition to Defendants' Demurrers and Special Pleas, p. 8.

The trial court held a hearing on the pleas in bar and the demurrers in August 2017.[8] No transcript of the hearing appears in the record.

---

[7] Sage's memorandum in opposition to the defendants' demurrers and special pleas concludes with a prayer for relief: "Plaintiffs respectfully move the Court to overrule and deny Defendants' demurrers and special pleas." Plaintiff's Memorandum in Opposition to Defendants' Demurrers and Special Pleas, p. 30.

[8] The precise date of the August 2017 hearing on the demurrers and pleas in bar is not clearly stated in the record. The trial court's order on the demurrers and pleas in bar states that

On September 8, 2017, the trial court issued a letter opinion ruling on several of the demurrers and pleas in bar; however, the opinion did not address the breach of contract plea in bar or the motion craving oyer.[9] With respect to the breach of contract claim, the opinion letter stated, "If I recall correctly, the parties agree that the Breach of Contract claim is not subject of demurrer and they agree that such claim is sufficient in law." The opinion continued, "If the Court does not have an accurate recollection [with regard to the contract claim], please advise." On September 14, 2017, counsel for the defendants submitted a letter to the trial court clarifying that the plea in bar on the contract claim was heard on August 18, 2017, and the demurrer to the contract claim was withdrawn. The defendants' letter also stated that Sage had contested the plea in bar at the hearing, but not in its memorandum. The letter did not reference a ruling on the motion craving oyer.

On September 18, 2017, Chatham Ridge filed a notice of hearing to be held on October 6, 2017, on its plea in bar and the demurrer to the counterclaim. No transcript of this hearing appears in the record. On October 13, 2017, the defendants moved the trial court for entry of an order reflecting the trial court's rulings from the August 21, 2017 hearing, as reflected in letter opinions dated September 8, 2017, and September 26, 2017. Defendants noted that Sage had refused to endorse the order because it intended to file a motion to reconsider. The trial court's September 26, 2017 letter opinion stated that after reviewing defense counsel's September 14,

_____

the hearing was held on August 18, 2017, but the notice of hearing for an August 21, 2017 hearing was filed on August 18, 2017. Some pleadings in the record indicate that the parties were heard on August 18, 2017, and others refer to an August 21, 2017 hearing. In any event, no transcript reflecting an August 2017 hearing is in the record.

[9] A subsequent motion filed by defendants indicates that the motion to crave oyer was not argued on August 21, 2017, because the plaintiffs were not prepared.

- 4 -

2017 letter, the court will sustain the plea to the breach of contract claim.[10]  The trial court did not rule immediately on the motion to enter the order.  Following yet another notice of hearing, the trial court entered an order on March 8, 2018, reciting its rulings from "August 18, 2017," including its decision granting Chatham Ridge's plea in bar to Sage's breach of contract claim.[11]

On March 20, 2018, Sage filed a second amended complaint omitting the breach of contract claim and asserting conspiracy, defamation, insulting words, and malicious prosecution claims.[12]

On December 15, 2021, the defendants filed a motion *in limine* to exclude the search warrant affidavit that Sage intended to introduce into evidence at the jury trial.  The defendants' motion stated that Sage's pretrial witness list did not include the officer who had filed the supporting affidavit, Detective K.B. Miller.  They argued that Detective Miller's affidavit was, therefore, inadmissible hearsay.  The defendants also argued Sage did not identify a witness or custodian who could lay the foundation for the admission of the search warrant affidavit under the hearsay exceptions for either business or governmental records.

On December 20, 2021, before the jury trial, the court heard argument on the defendants' motion *in limine*.  The trial court initially denied the motion, ruling that the search warrant affidavit was admissible as a judicial record.  During Sage's and Mancuso's case-in-chief, however, the trial court sua sponte reversed its denial of the defendants' motion *in limine* on the grounds that the affidavit contained additional hearsay for which there was no exception.

_____

[10] The September 26, 2017 letter opinion does not appear in the record other than as the attachment to the motion for entry of an order.

[11] The trial court also granted certain demurrers and a plea in bar regarding claims unrelated to this appeal.  Sage acknowledges that its appeal is limited to its breach of contract and malicious prosecution claims.

[12] Sage's second amended complaint, at paragraphs 23-25, states "Count I : Breach of Contract, The court previously granted Chatham Ridge's plea in bar, to which Sage objects."

Mancuso did not contemporaneously object to this ruling and did not contemporaneously identify any applicable hearsay exceptions. Nor did Mancuso proffer the contents of the excluded search warrant and affidavit. After Sage and Mancuso rested their case, Mancuso asked the trial court to reconsider its ruling granting defendants' motion *in limine*, but he again failed to proffer the excluded evidence. The trial court denied Mancuso's motion to reconsider.

At trial, Mancuso testified that in 2010, Pendleton and Bollfrass threatened him with criminal prosecution after they expressed concerns about the checks Mancuso was using to pay himself from Chatham Ridge accounts. Mancuso also testified that the Albemarle Police Department executed a search warrant on his home in 2012, seizing his documents and computers. Mancuso further testified that he was charged with multiple felony counts of embezzlement in 2015.[13]

At the conclusion of Sage's evidence, the trial court struck the claims for defamation, insulting words, malicious prosecution, and conspiracy, and dismissed Sage's "causes of action" with prejudice. Chatham Ridge nonsuited its counterclaim with prejudice, leaving no claims for the jury's consideration. On March 17, 2022, the trial court entered a final order.

On April 14, 2022, Sage appealed the trial court's "order on motion *in limine* to exclude search warrant affidavit" and the final order "which granted the motion *in limine* and motion to strike."[14] Sage originally filed his notice of appeal in the Supreme Court of Virginia. The Supreme Court transferred the appeal to this Court on August 8, 2022.

---

[13] The charges against Mancuso were subsequently nolle prossed and dismissed on June 14, 2016.

[14] Although the notice of appeal does not expressly cite the trial court's plea in bar ruling, it does appeal the final order, which by its terms "dispose[d] of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, [and] gives all the relief contemplated." Rule 1:1(b).

ANALYSIS

I.  The circuit court did not err in granting the plea in bar to Sage's contract claim.

Sage asserts that the trial court erred in granting the defendants' plea in bar to Sage's contract claim based on the five-year statute of limitations for breach of contract claims.  Sage contends that under Code § 8.01-230, its cause of action for breach of contract did not accrue until April 10, 2011—the date of Sage's demand letter to Chatham Ridge, and a date less than five years from the April 6, 2016 filing date of Sage's complaint.  Sage further contends that the jury should have resolved the contested facts relating to the plea in bar and cites *Bethel Investment Co. v. City of Hampton*, 272 Va. 765, 770 (2006), to support this argument.  For the following reasons, we disagree with Sage.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)).  "The party asserting the plea in bar bears the burden of proof." *Id.*  The party asserting the plea in bar must prove the facts supporting the plea by a "preponderance of the evidence." *See Patterson v. City of Danville*, 301 Va. 181, 196 n.8 (2022) (citing *RF & P Corp. v. Little*, 247 Va. 309, 318 (1994); *Massenburg*, 298 Va. at 216; Kent Sinclair, *The Law of Evidence in Virginia* § 5-7, at 337 (8th ed. 2018)) (defendant asserting a plea in bar bears the burden of proving the facts supporting the defense by a "preponderance of the evidence").  "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Robinson v. Nordquist*, 297 Va. 503, 513-14 (2019) (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996)).  "In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Massenburg*, 298 Va. at 216 (alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)).  "This approach results in functionally de novo review of the trial court's judgment." *Id.*

If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea. *See* Code § 8.01-336(B); *Bethel*, 272 Va. at 770; *Upper Occoquan Sewage Auth. v. Blake Constr. Co., Inc.*, 266 Va. 582, 585-86 (2003). Article I, section 11 of the Constitution of Virginia provides, inter alia, "[t]hat in controversies respecting property, and in suits between man and man, trial by jury is preferable to any other, and ought to be held sacred." Va. Const. art. I, § 11. Conversely, if the facts are disputed and no demand for a jury is made, the "whole matter of law and fact" may be decided by the court. *See* Code § 8.01-336(B).

In "Chatham Ridge's Plea in Bar," Chatham Ridge asserted that the statute of limitations on Sage's contract claim had accrued more than five years prior to the April 10, 2016 filing date of Sage's complaint. Sage's written opposition did not make any argument or state any *ground* in opposition to Chatham Ridge's plea in bar to its contract claim. Sage argued only that its allegations were *sufficient* to constitute a claim for breach of contract. Without specifically referencing the plea in bar to its contract claim, Sage only requested generally that the circuit court overrule Chatham Ridge's "special pleas." No transcript—or written statement of facts in lieu of a transcript—of the hearing conducted on the plea in bar is part of the record on appeal.

Sage contends on appeal that its complaint compels a finding that its cause of action for breach of contract did not accrue until the date of the April 10, 2011 demand letter. This contention—asserted for the first time on appeal—is incorrect. The statute of limitations for breach of contract is five years for written contracts and three years for oral or implied contracts. *See* Code § 8.01-246(2) (five-year statute of limitations for written contracts); Code § 8.01-246(4) (three-year statute of limitations for unwritten or implied contracts). Sage filed its complaint on April 6, 2016. The statute of limitations begins to run when the cause of action accrues. *See Moonlight Enters., LLC v. Mroz*, 293 Va. 224, 235 (2017). A cause of action for breach of contract accrues "when the breach of contract occurs . . . and not when the resulting damage is discovered." Code § 8.01-230.

Consequently, Sage's breach of contract claim is untimely if the breach alleged in Count I of its complaint occurred prior to April 6, 2011. Taking as true Sage's allegation that the payment demand letter was sent on April 10, 2011, this does not support an inference that Sage's breach of contract claim is timely unless the contractual breach that precipitated Sage's demand occurred on or after April 6, 2011.

Sage's further contention, also made for the first time on appeal, that it was entitled to a jury determination of the factual issues underlying Chatham Ridge's plea in bar is also without merit. The trial court record does not reflect that Sage made a request for a jury determination of any factual issue relating to the plea in bar. Sage's reliance on *Bethel* is unavailing. In *Bethel*, Bethel Investment Co. sued the City of Hampton for causing damage to its land by acts affecting the water table. 272 Va. at 768. The city filed a plea in bar alleging that the relevant statute of limitations had run. *Id.* The factual issue of when Bethel's land first suffered damage was disputed, and Bethel expressly demanded a jury determination of that issue. *See id.* at 770.

Here, the record does not show that any request for a jury determination of the facts underlying the plea in bar was made. At oral argument, Sage asserted that it requested that determination when requesting a jury trial on its complaint, but Sage's complaint does not allege the date on which the breach alleged in Count I occurred. Sage's failure to request a jury determination of facts underlying Chatham Ridge's plea in bar waived its right to a jury determination of those facts and authorized the trial court to make that determination. *See* Code § 8.01-336(B).

The trial court did not err in granting the plea in bar because the allegations in Sage's complaint—assumed true—demonstrate by a *preponderance* of the evidence that the breach of contract alleged in Claim I occurred prior to April 6, 2011. The pertinent allegations in Sage's complaint are as follows: On April 10, 2007, a fire occurred at Chatham Ridge causing substantial damage. In June 2007, Chatham Ridge executed a reconstruction agreement with Sage. Beginning

in or about January 2008, with the agreement of Chatham Ridge, Sage and CCS "performed the remaining repair work." In or about March 2010, CCS "decided to close the business of CCS." CCS assigned all of its rights to receive compensation for work done at Chatham Ridge to Sage. By letter dated April 10, 2011, CCS demanded payment for the "remaining balance owed by Chatham Ridge ($80,239.55)." Assuming that all these allegations are true, the preponderance of the evidence supports an inference that CCS completed its reconstruction work for Chatham Ridge in 2008, or at the latest, before ceasing its operations in March 2010.[15] The *preponderance* of this evidence further supports an inference that Chatham Ridge's payments for the work performed by CCS were due prior to April 6, 2011—more than a year after the work was completed. *See McDaniel v. Daves*, 139 Va. 178, 188 (1924) ("If no time be mentioned, it is to be inferred that either immediate payment or payment in a reasonable time according to the circumstances is intended."). Moreover, the fact that CCS asserted a demand on April 10, 2011, for Chatham Ridge's payment of the remaining balance supports a reasonable inference that an invoice was sent earlier and remained unpaid after a substantial lapse of time. On these facts, the trial court did not err in concluding that Chatham Ridge satisfied its burden to prove by a preponderance of the evidence that Sage's cause of action for breach of contract accrued prior to April 6, 2011. Sage asserted breach of contract more than five years later on April 11, 2016. Thus, the trial court did not err in ruling that Sage's complaint was time-barred.

II. The circuit court did not err in excluding the search warrant affidavit.

Mancuso asserts that the trial court erred in granting the defendants' motion *in limine* and excluding a search warrant affidavit from the evidence at trial. The affidavit was purportedly filed by Detective Miller of the Albemarle Police Department in support of an application for a warrant

---

[15] At trial, Mancuso testified that the reconstruction work for Chatham Ridge was completed in 2008, or at the latest in 2009.

to search Mancuso's home for evidence of potential fraud relating to Mancuso's disbursement of Chatham Ridge funds. The affidavit is not part of the record in this appeal. However, Pendleton's motion *in limine* discloses that the affidavit contains a statement by Detective Miller that Pendleton had reported that Mancuso was suspected of fraud relating to transactions involving Chatham Ridge.[16] If so, the affidavit would appear to lend some support to Mancuso's malicious prosecution claim that his prosecution for embezzlement was "instituted by or with the cooperation of" Pendleton. *See Dill v. Kroger Ltd. P'ship I*, 300 Va. 99, 109 (2021) (the second element of a malicious prosecution claim is that the prosecution was "instituted by or with the cooperation of" the defendant).

Prior to the trial, the trial court denied Pendleton's motion *in limine*, agreeing with Mancuso that the affidavit is a judicial record made admissible by Code § 8.01-389. Code § 8.01-389 addresses judicial records as evidence and provides, in pertinent part, that:

> The records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record.

Code § 8.01-389(A). Code § 8.01-389(D) defines "records" to "include any memorandum, report, paper, data compilation, or other record in any form, or any combination thereof." The trial court found that the definition of "records" was broad, and credited Mancuso's argument, citing *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 63-64 (4th Cir. 1989), that affidavits filed in support of an application for a search warrant had specifically been found by courts to be "judicial records." As explained in *Baltimore Sun*,

> The requirement that warrants issue only upon oath or affirmation showing probable cause is embodied in the [F]ourth [A]mendment. A judicial officer must review the affidavit to determine whether the

---

[16] Mancuso's brief in this Court appears to include, without citation to the record, a partial image of text from Detective Miller's affidavit. Since the affidavit is not part of the record, the image included in Mancuso's brief is an improper exhibit and will not be considered.

- 11 -

> warrant should issue. This initial review is subject to further review by district and appellate courts upon motion to suppress the objects seized in the search. Federal Rule of Criminal Procedure 41(g) directs the judicial officer to file the warrant and all papers in connection with it with the clerk of the district court. The papers are then available for use in a subsequent criminal trial if its sufficiency is questioned. *We therefore conclude that affidavits for search warrants are judicial records.*

*Id.* (emphasis added).

However, after a break on the first day of trial, the trial court sua sponte reconsidered and reversed its ruling, granting the motion *in limine* and excluding the affidavit on the grounds of hearsay. The trial court explained that although Code § 8.01-389 provides an exception to the hearsay rule for judicial records, it does not automatically render admissible any further hearsay contained within the affidavit. At the time of this ruling, Mancuso did not state any ground for overcoming an objection to the additional hearsay contained in the affidavit. Instead, during argument on the defendants' motion to strike *after the close of his case in chief*, Mancuso belatedly argued that the hearsay statements might be admitted for a purpose other than the truth of the matter asserted, or, alternatively, that the statements were made by Pendleton, a party opponent.

Although the record does not include the affidavit at issue, representations made to the trial court by both Mancuso and Pendleton about the hearsay statements at issue are sufficient to preserve the issue for review. Mancuso did not proffer the affidavit—either when it was initially excluded or when the trial court rejected further argument on its admissibility during consideration of the defendants' motion to strike. Ordinarily, when a trial court grants a motion to exclude evidence, "the aggrieved party must make a proper proffer of the [evidence] to preserve the ruling for appellate review." *Klein v. Klein*, 11 Va. App. 155, 160 (1990). However, such a proffer "may consist of a unilateral representation of counsel, if unchallenged, or a mutual stipulation of the proffered [evidence]." *Id.* Here, the hearsay statement at issue—Detective Miller's statement that Pendleton reported that Mancuso was suspected of having fraudulently handled Chatham Ridge's

account—was represented to the trial court by *both* Pendleton and Mancuso. This circumstance is sufficient to preserve the issue for appellate review.

"It is well-settled that we 'review a trial court's decision to exclude evidence for an abuse of discretion, and we will not disturb a trial court's evidentiary ruling absent an abuse of discretion.'" *John Crane, Inc. v. Hardick*, 283 Va. 358, 367 (quoting *Kimble v. Carey*, 279 Va. 652, 662 (2010)), *opinion modified on reh'g*, 284 Va. 329 (2012). In evaluating whether a trial court abused its discretion, as Mancuso alleges here, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)); *see also Noll v. Rahal*, 219 Va. 795, 801-02 (1979) (trial court did not abuse its discretion in disqualifying an expert witness even though "reasonable trial judges could properly disagree" and "some members of this [C]ourt, had they presided at the trial, may have admitted" the testimony); *Thomas v. Commonwealth*, 44 Va. App. 741, 753 ("Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."), *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "The abuse-of-discretion standard [also] includes review to determine that the discretion was not guided by erroneous legal conclusions." *Porter v. Commonwealth*, 276 Va. 203, 260 (2008) (quoting *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Considering the record in light of these principles, we cannot say the trial court abused its discretion by excluding the search warrant affidavit. As noted by the trial court, Detective Miller's affidavit contains multiple levels of hearsay. For hearsay within hearsay to be admissible, both the primary hearsay declaration and each hearsay declaration included within it must conform to a recognized exception to the hearsay rule. *See Commonwealth v. Swann*, 290 Va. 194, 198 (2015); Va. R. Evid. 2:805 ("Hearsay included within hearsay is not excluded under the hearsay rule if *each part of the combined statements conforms with an exception to the hearsay rule.*" (emphasis

- 13 -

added)).  The first level of hearsay includes the statements made by Detective Miller.  But within that hearsay is another hearsay statement attributed to Pendleton.  Thus, the affidavit is admissible only if both Detective Miller's statements and the reference to Pendleton's report included therein conform to an exception to the hearsay rule.  *See Swann*, 290 Va. at 198; Va. R. Evid. 2:805.

Moreover, Code § 8.01-389 codifies the official records exception to the rule excluding hearsay.  *See Taylor v. Commonwealth*, 28 Va. App. 1, 10 (1998).  As such, the hearsay exception in Code § 8.01-389 only applies "if the document 'relates facts or events within the personal knowledge and observation of the recording official to which he could testify should he be called as a witness.'"  *Ingram v. Commonwealth*, 1 Va. App. 335, 339 (1986) (quoting *Williams v. Commonwealth*, 213 Va. 45, 46 (1972)).  The statement at issue contained in the affidavit—that Pendleton reported to the Albemarle Police Department that Mancuso was suspected of fraudulent activity in his handling of Chatham Ridge's account—does not relate "facts or events within the personal knowledge and observation of [a] recording official."  *See id.* (quoting *Williams*, 213 Va. at 46).

Mancuso belatedly argued that the relevant statement in the search warrant affidavit was admissible as non-hearsay because it was not offered for the truth of the matter asserted.  In the alternative, Mancuso argued that the statement attributed to Pendleton was admissible as a statement by a party opponent.  Mancuso made these arguments after he had concluded his case in chief and the defendants had moved to strike his evidence.  Mancuso's arguments came too late.  *See* Rule 5A:18 (objections must be stated with reasonable certainty *at the time of the ruling*).

Moreover, admitting the statement at issue without considering its truth would render the search warrant affidavit irrelevant to Mancuso's malicious prosecution claim.  If Detective Miller's statement that Pendleton reported to the Albemarle Police Department that Mancuso engaged in fraudulent activity is not considered for its truth, then the search warrant affidavit is not substantive

evidence that Mancuso's prosecution was "instituted by or with the cooperation of" Pendleton. *See Dill*, 300 Va. at 109. Mancuso's further argument that Detective Miller's statement that Pendleton made a report is a non-hearsay statement of a party opponent fails because, without proving the admissibility of Detective Miller's statement, there is no evidence that Pendleton made the statement. *See Bloom v. Commonwealth*, 262 Va. 814, 821 (2001) (proponent of an out-of-court statement of a party must prove all facts supporting admissibility by a preponderance of the evidence). Therefore, we cannot find that the trial court abused its discretion in excluding the search warrant affidavit.

III. The circuit court did not err in striking Mancuso's malicious prosecution claim.

Mancuso asserts that the trial court erred when it granted the defendants' motion to strike his malicious prosecution claim. Mancuso contends that his testimony at trial, taken in the light most favorable to him, is sufficient to permit the jury to infer that the police search of his home and subsequent charges against him were instituted by or with the cooperation of the defendants Bonnie Pendleton and Katha Bollfrass. We disagree.

"A circuit court must rule on a motion to strike based on the presumption that the jury will believe all the evidence favorable to the plaintiff, as well as all reasonable inferences that a jury might draw therefrom in favor of the plaintiff." *Dill*, 300 Va. at 109 (citing *Tahboub v. Thiagarajah*, 298 Va. 366, 371 (2020); *Green v. Ingram*, 269 Va. 281, 290 (2005)). "When evaluating a motion to strike, the circuit court must not judge the weight or credibility of evidence, because to do so 'would invade the province of the jury.'" *Id.* (quoting *Tahboub*, 298 Va. at 371; citing *Green*, 269 Va. at 290). A circuit court may grant a motion to strike at the conclusion of a plaintiff's evidence "only where 'it is conclusively apparent that plaintiff has proven no cause of action[.]'" *Int'l Paper Co. v. Cnty. of Isle of Wight*, 299 Va. 150, 170 (2020) (quoting *Brown v. Koulizakis*, 229 Va. 524, 531 (1985)). Accordingly, "[w]hen reviewing a trial court's decision to

grant a motion to strike the plaintiff's evidence, we view the evidence presented at trial in the light most favorable to the plaintiff and accord the plaintiff the benefit of any inferences that may be fairly drawn from the evidence." *Curtis v. Highfill*, 298 Va. 499, 502-03 (2020).

"To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was '(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.'" *Dill*, 300 Va. at 109 (quoting *Lewis v. Kei*, 281 Va. 715, 722 (2011)). "Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil actions." *Id.* (quoting *Lewis*, 281 Va. at 722-23).

The only evidence relating to Pendleton's or Bollfrass's alleged institution of or cooperation with the prosecution of Mancuso is Mancuso's trial testimony that in 2010, Pendleton and Bollfrass threatened him with criminal prosecution after expressing their concerns about the checks Mancuso was using to pay himself from Chatham Ridge accounts. Mancuso also testified that the Albemarle Police Department executed a search warrant on his home in 2012, seizing his documents and computers. Mancuso further testified that he was charged with multiple felony counts of embezzlement in 2015. The trial court ruled that even in the light most favorable to Mancuso, any threats made by Pendleton or Bollfrass in 2010 were too vague to permit an inference that Pendleton or Bollfrass instituted or cooperated with Mancuso's subsequent prosecution. We agree. The evidence tending to show that Pendleton or Bollfrass instituted or cooperated with Mancuso's prosecution "must be sufficient to take the question out of the realm of mere conjecture, or speculation, and into the realm of legitimate inference, before a question of fact for submission to the jury has been made out." *See Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 271 Va. 206,

218 (2006).  This record contains no evidence of any communications between Bollfrass or Pendleton and the Albemarle Police Department.  Consequently, the jury would have had no basis to conclude that Bollfrass or Pendleton instituted or cooperated with the actions taken by the Albemarle Police Department.  Accordingly, the trial court did not err in granting the defendants' motion to strike Mancuso's malicious prosecution claim.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*